156    437|
205    ²298|

156    437|
e215   ¹183|

Quincy, Omaha and Kansas City Railway Co. *et al.*

*v.*

The People *ex rel.* James B. Corrigan.

*Filed at Springfield June 13, 1895.*

1. Taxes—*when a railroad is "operated within the State," so as to require return of property for taxation.* A railroad is operated within the State, within the meaning of a statute requiring a return of property for taxation, when depots, switch-yards, shops and side-tracks are in the State, and used for railroad purposes by the aid of a leased track, although the main track of the road is all in another State.

2. Same—*terminal facilities are "railroad track," within the meaning of the Revenue law.* Terminal facilities, including side-tracks, depots, switch-yards and shops, are properly classed as "railroad track," to be assessed by the State Board of Equalization, and cannot be assessed by the local assessor.

Appeal from the County Court of Adams county; the Hon. Benjamin F. Berrian, Judge, presiding.

The appeal in this case questions the act of the county court of Adams county in rendering judgment for taxes against certain lots in the city of Quincy owned by appellant, and which were sought to be taxed on an assessment made by the local assessor of the town.

The Quincy, Omaha and Kansas City Railway Company owns a line of railroad from Trenton, Mo., to a point on the Mississippi river known as West Quincy. The road is at present operated by John Patton and Edwin Parsons, trustees in charge for bondholders, and who are in possession of all the property of the road. The lots in question which it is sought to tax are occupied by appellant's passenger depot, freight depot, shops, roundhouse, water tanks, side-tracks, and used for other purposes in connection with the business of the road, and are not used for any other purpose. In order to reach this property, on which its depots are located, appellant uses the Chicago, Burlington and Quincy tracks in

the city of Quincy. Trains arriving on the road of appellant at West Quincy proceed across the bridge controlled by the Chicago, Burlington and Quincy company, and thence over the tracks of the latter about three-fourths of a mile south to appellant's passenger depot. The freight depot and switch-yards of appellant are still further south. The bridge, and that portion of the Chicago, Burlington and Quincy tracks connecting appellant's depots and switch-yards with its main track in West Quincy, are used by appellant under a lease or agreement with the Chicago, Burlington and Quincy company. Trains with passengers, freight, baggage, mail and express, destined for Quincy or points east, are run over the bridge and the leased lines, and passengers and freight carried are discharged at the Quincy depot, and likewise trains west bound are there loaded. In other words, while appellant's road ends at West Quincy, its terminus, by virtue of its use of leased lines, is east of the river, in the city of Quincy. The lots owned by appellant, described as lots 6, 7 and 8, in block 44, lots 5, 6, 7 and 8, in block 46, all in Wood's addition to Quincy, and lot 4, block 52, in Holmes & Wood's addition, and block 3, in Von Phul's addition to Quincy, contain about 5204 feet of side-track, in addition to the buildings above mentioned, all necessary in the management and operation of the road. All the property of appellant in this State is in the town of Quincy.

In pursuance of a demand made by the State Board of Equalization of this State, the auditor of appellant, in 1892, made his return to this board of all the property owned by his company in this State, which was assessed by the board as "railroad track," and appellant paid on this assessment the sum of $977.27. The local assessor of the town of Quincy also assessed these lots, with tracks and buildings thereon, for the year 1892, and the tax, as extended, amounted to $669.38. The lots were advertised for delinquent taxes, and a judgment sought

to be taken against them. Numerous objections were filed by appellant, to the effect, in substance, that the trustees, Patton and Parsons, were engaged in operating the road in this State; that the lots and block are part of the road, and were at the time of the assessment, whereby they are, under the statute, "railroad track;" that the local assessor had no power to assess this property, and that consequently the assessment was void; that said trustees had caused a schedule of all this property, under the head of "railroad track," to be filed in the county clerk's office and also with the State Board of Equalization, and that all the property had been assessed by said board and the tax so assessed by them had been paid. The county court overruled all objections and rendered judgment against these lots and block for delinquent taxes, from which judgment this appeal is prosecuted.

BERRY, O'HARRA & SCOFIELD, for appellants:

The trustees were "operating" a railroad in this State, in the legal sense of that term, even on that part of their line owned or controlled by the Chicago, Burlington and Quincy Railroad Company, and over which they operated under the contract in evidence. *Railway Co.* v. *Gerber,* 82 Ill. 632; *Railway Co.* v. *Rumbold,* 40 id. 143; *Railroad Co.* v. *Kanouse,* 39 id. 272.

The property in controversy is of the class denominated in the statute "railroad track," and is not assessable by the local assessor. *Railroad Co.* v. *People ex rel.* 98 Ill. 350; *Railroad Co.* v. *People ex rel.* 99 id. 464; *Railway Co.* v. *Goar,* 118 id. 134; *Railroad Co.* v. *People ex rel.* 129 id. 571; *Railroad Co.* v. *People ex rel.* 4 Ill. App. 468.

ALMERON WHEAT, and CARL E. EPLER, for appellee:

The payment of the tax assessed by the State Board of Equalization, if invalid, did not relieve appellant from paying the tax levied by the local assessor. *Railroad Co.* v. *People ex rel.* 136 Ill. 669.

"Main track" is used in contradistinction to side or second tracks or turn-outs. *Huck* v. *Railroad Co.* 86 Ill. 359.

The theory of the system is manifestly to treat the railroad track, its rolling stock, its franchise and its capital, as a unit for taxation, and to distribute the assessed value of this unit according as the length of the road in each county, city and town bears to the whole length of the road. *State Railroad Tax cases,* 92 U. S. 601; *Railroad Co.* v. *Weber,* 96 Ill. 443.

There is no liability of a railroad to be assessed for its rolling stock, merely because it runs its trains over a section of road under a mere easement or license. *Cook County* v. *Railroad Co.* 35 Ill. 464; *Kennedy* v. *Railroad Co.* 62 id. 397.

A road over which a company occasionally runs its trains under a mere easement or a license, is not any part of its main track. *Cook County* v. *Railroad Co.* 35 Ill. 465.

The jurisdictional basis of the power of the State Board of Equalization to tax railroads is the existence of the main track of such railroad in the State of Illinois. *Cook County* v. *Railroad Co.* 35 Ill. 463 ; *Huck* v. *Railroad Co.* 86 id. 352; *Kennedy* v. *Railroad Co.* 62 id. 397; Cooley on Taxation, (2d ed.) 383.

Mr. JUSTICE PHILLIPS delivered the opinion of the court:

The question to be determined by this court is, whether the lots and property owned by appellant are to be taxed on an assessment by the local assessor of the town of Quincy or by the State Board of Equalization. All the property of this company in this State is situated in the town of Quincy, and whether the tax is extended by virtue of the assessment made by the assessor of that town or by the State Board of Equalization, so far as the revenue is concerned, is immaterial, as the town, in either case, receives the benefit.

Section 40, chapter 120, of Starr & Curtis' Statutes, provides that "every person, company or corporation owning, operating or constructing a railroad in this State shall return sworn lists or schedules of the taxable property of such railroad, as hereinafter provided," etc.    It is insisted that the trustees, Patton and Parsons, are not operating a railroad in this State.    Theoretically the eastern terminus of their road is on the west side of the Mississippi river, but practically it is on this side, in the city of Quincy.    The passenger and freight depots are located in this State, and also their round-house, switch-yards, side-tracks and terminal facilities.    The fact that these are reached by running over a portion of a leased line of road does not change the fact.    The trains of appellant, on arriving from Trenton, Mo., do not remain on the west side of the river, but are operated through to this State, where its passengers, freight and mail are discharged.    Its freight and passenger trains are made up in the switch-yards in Illinois, and, in fact, all trains arrive at and depart from its station in this State.    Under the section of the statute above referred to it is not necessary that appellant should own all the lines used by it.    A railroad company running its trains on a leased line of road, and transacting, in connection therewith, the business usually done by such corporations, is operating a road in this State under this statute.    Every running of a train by appellant carrying passengers and freight over the line of the Chicago, Burlington and Quincy railroad to the terminus of appellant's road in Quincy was an act of operating a railroad in this State.    The manner and method of the arrival and departure of trains from the Quincy station, and the use made by appellant of its terminal facilities, show that the trustees were operating a railroad in this State.    Irrespective, however, of the fact as to whether or not this road was being operated in this State, it is an assured fact that the property sought to be taxed is located in Illinois, and the important ques-

tion to be determined is, whether it should be assessed by the assessor of the township or by the State Board of Equalization.

It is insisted by appellee that the property is subject to assessment by the local assessor, for the reason that appellant has no main track located in this State. Section 41, chapter 120, of Starr & Curtis' Statutes, provides for the filing of sworn schedules by persons owning or operating a railroad in this State, showing the property held for right of way, and the length of the main and all side and second tracks and turn-outs in such county, etc. Section 42 of the same statute provides as follows: "Such right of way, including the superstructures of main, side or second track and turn-outs, and the station and improvements of the railroad company on such right of way, shall be held to be real estate for the purpose of taxation, and denominated 'railroad track,' and shall be so listed and valued," etc.

The trustees of the appellant company are engaged in operating a railroad in this State. It is not necessary for a railroad company to own a main track in order to be engaged in the operation of a railroad. It is sufficient that it is operating a leased line, or, as in the case at bar, is running all its trains through or into this State by virtue of a contract or lease from another railroad. The property in question, it appears, is used altogether for railroad purposes, and is all necessary in the operation and management of appellant's road. This is not disputed, nor is it shown that any part of the property is used for any other than strictly railroad purposes.

In the case of *Chicago and Alton Railroad Co.* v. *People,* 98 Ill. 350, there was an assessment of a tract of ground occupied by railroad tracks, switches, turn-outs and depots, shops and other buildings used in the business of the railroad. It was assessed by the State Board of Equalization as railroad track, and, like this, it was

assessed as land by the local assessor.   The contest was as to which was the legal and valid assessment, and it was held that the law required the land to be assessed as "railroad track," and the assessment by the local assessor was unauthorized and the collection of the tax extended on that assessment could not be enforced.   Such is also the rule announced in the case of *Chicago and Alton Railroad Co.* v. *People,* 99 Ill. 464.

In the case of *Peoria, Decatur and Evansville Railway Co.* v. *Goar,* 118 Ill. 134, the facts were somewhat similar to the case at bar, the lots and blocks being occupied by the railway company with its shops, depots and other buildings and with a large number of railroad tracks, and used exclusively for railway purposes.   The proper schedule was returned to the State Board of Equalization, and the property was by it assessed according to law.   The local assessor sought in that case to assess the property, and this court in the opinion says:   "There is no doubt, from the proof, that the property upon which this assessment by the local assessor was made was of the class denominated 'railroad track,' and alone assessable by the State Board of Equalization, and that it was assessed by such board and the tax under that assessment paid, so that the assessment by the local assessor was null and void." The same doctrine is adhered to in the case of *Chicago and Alton Railroad Co.* v. *People,* 129 Ill. 571.

In the present case the appellant complied with the request of the State Board of Equalization to return to it its schedule of its property, which, it appears, was made in proper form, and all of the property in controversy was assessed by the State Board of Equalization, and the tax on the assessment thus made has been paid by appellant.   We hold in this case that the only legal assessment made of appellant's property was that made by the State Board of Equalization assessing the property of appellant as "railroad track," and therefore the assessment made by

the local assessor was null and void, and the county court should have sustained the objections made by the appellant to the rendering of judgment against this property for delinquent taxes.

For the errors indicated the judgment of the county court is reversed.

*Judgment reversed.*