THOMAS SLAUGHTER v. CANADIAN PACIFIC RAILWAY COMPANY.[1]

December 24, 1908.

Nos. 15,826—(134).

**Foreign Railway—Transacting Business in Minnesota.**

Where a foreign railway company does not own or operate a railway within this state, but its cars are brought into the state by another railway company under some joint traffic arrangement, the foreign company is not transacting business within this state, within the rule of Hillary v. Great Northern Ry. Co., 64 Minn. 361.

**Same—Service of Process.**

A ticket agent of such local railway company, who sells through joint tickets over the local line within the state and also over the foreign line beyond the state, is not a ticket agent of the foreign company upon whom service of process may be made, as provided by section 4110, R. L. 1905.

Action begun before a justice of the peace to recover wages alleged to have been earned while acting as sleeping car porter. The defendant appeared specially and moved to set aside the service of the summons on the ground that the person on whom the attempted service was made was not its agent. The motion was denied, and from the judgment entered by the justice, defendant appealed to the municipal court of St. Paul upon questions of law alone, where the judgment of the justice was affirmed. From an order of the municipal court denying a new trial, Hanft, J., defendant appealed. Reversed.

*Leslie Kinnard* and *Alfred H. Bright,* for appellant.

In Hillary v. Great Northern Ry. Co., 64 Minn. 361, the tickets sold by the agent of the depot company were in no sense its tickets, but

[1] Reported in 119 N. W. 398.

were the tickets of the defendant, good in the first instance over its lines of railway. The tickets sold by Lewis were not the tickets of appellant in the first instance, and were not good over appellant's line of railway until the holder reached the connection of appellant's line of railway with the Soo Line beyond the borders of the state of Minnesota. They were the tickets of the Soo Line, good in the first instance over its line to its connecting point with appellant's line. In the case cited the tickets of defendant were placed in the agent's hands by the defendant and sold for it. In this case the tickets were placed in the agent's hands by the Soo Line and not by appellant, and were sold for the Soo Line and not for appellant. In the case cited the agent reported directly to the defendant the number of tickets sold for it and handled for and accounted to it for the proceeds thereof. In this case Lewis made no accounts or reports whatsoever to appellant, and neither handled nor collected any money for or on behalf of appellant. See also Mikolas v. Hiram Walker & Sons, 73 Minn. 305; Wold v. J. B. Colt Co., 102 Minn. 386; North Wis. Cattle Co. v. Oregon Short Line R. Co., 105 Minn. 198; Mexican Cent. Ry. Co. v. Pinkney, 149 U. S. 194, at page 202.

In its last analysis the question before this court in this case is: Does an agent of a domestic railway company by the act of selling through tickets good over its line and the line of foreign railway companies become the agent of the foreign company in fact, having a representative capacity and derivative authority so as to render service of process upon him binding upon the foreign company? In this state running and operating out of the Twin Cities alone there are ten different and distinct railway companies. Most of these are Minnesota corporations, while all of them are actually engaged in the business of operating railroads within the state. These railroads, of course, do not extend into every state, city and village in these United States, yet by virtue of traffic arrangements the various agents of these railroads can and do sell through tickets, which entitle the traveler to transportation to the most distant cities in the United States. The selling of these through tickets is clearly as much of a benefit to the public as it is to the railroads. A decision that the agent of a domestic railway company is the agent of the foreign railway company because a part of the ticket which he sells is good for transportation

over the foreign company's line would confer upon the courts of this state jurisdiction over the railroads of every other state in this Union and even of the civilized world. Would not the statute of Minnesota so interpreted be an interference with the interstate and foreign commerce and void under the commerce clause of the constitution? We claim it would.

When the defendant in a justice court appears specially and objects to the jurisdiction of the court and after such objection has been overruled, the defendant does not waive the objection by remaining in court and participating in the trial on the merits. Perkins v. Meilicke, 66 Minn. 409; May v. Grawert, 86 Minn. 210; Elliott, App. Pr. 631; Harkness v. Hyde, 98 U. S. 476.

*Allen & Straight*, for respondent.

Mexican Cent. Ry. Co. v. Pinkney, 149 U. S. 194, is not applicable, as it turns on a statute differing from our own. For decisions of the United States courts upholding similar service under statutes like our own, see Union Pac. Ry. Co. v. Novak, 61 Fed. 573; Norton v. Atchison, T. & S. F. R. Co., 61 Fed. 618; Van Dresser v. Oregon Ry. & Nav. Co., 48 Fed. 202; Georgia v. Bigelow, 68 Ga. 219.

The defendant waived all objections to the service by appearing generally in the action and participating in the trial thereof on the merits. Anderson v. Southern Minnesota R. Co., 21 Minn. 30; St. Louis Car Co. v. Stillwater St. Ry. Co., 53 Minn. 129; Rheiner v. Union Depot, St. Ry. & T. Co., 31 Minn. 289

Especially is this true in the absence of any exceptions taken by the defendant to the denial of its motion to set aside the service. Mead v. Sanders, 57 Minn. 108; McCubrey v. Lankis, 74 Minn. 302.

LEWIS, J.

Respondent commenced this action in the justice court, and caused the summons to be served upon H. M. Lewis, who claimed to be the ticket agent of appellant company at the city of St. Paul. Appellant appeared specially and moved to set aside the attempted service upon the ground that Lewis was not the agent of appellant.

In support of the motion three affidavits were read: One by E. Pennington, vice president and general manager of the Minneapolis,

St. Paul & Sault Ste. Marie Railway Company, to the effect that appellant company neither owns nor operates any railway within the state of Minnesota; that the "Soo" road operates lines of railway in connection with appellant, and maintains joint traffic relations with that company; that the agents of the Soo road sell through tickets over its own line, and the line of the Canadian Pacific Railway Company, and other lines, to Boston, New York, and other points; that H. M. Lewis is the assistant general passenger agent of the Soo at St. Paul, appointed and paid by that company; and that he receives no compensation from appellant, and is in no way subject to its authority or control. The affidavit of Robert Kerr affirms that he is the passenger traffic agent of appellant company, and that his general office is at Montreal, Canada; that H. M. Lewis had never been the agent of appellant, and had no authority to act for it, except that he was authorized "to quote joint rates and issue through joint tickets good over the lines of the said Minneapolis, St. Paul & Sault Ste. Marie Railway Company and the Canadian Pacific Railway Company, as is generally done by a number of foreign roads with which the railway of the said Canadian Pacific Railway Company connects or the traffic arrangements with which permit of joint rates and through routes; that he collects and handles no money for or on behalf of said company, is under no bond to it, keeps no accounts for it, is not on its pay rolls, and performs no service or duties for said company, and receives no remuneration from said company, was not selected or appointed by it, and said company exercises no control over him whatsoever."

Respondent testified that he had been in appellant's employ for six months as a porter; that he knew of the Canadian Pacific Railway Company having a ticket agent in St. Paul, selling their tickets, and that he had taken them up while in their employ, and knew of parties going to the office on Robert street in St. Paul and buying tickets over appellant's line; that appellant runs its passenger trains into St. Paul over the Soo Line. Another witness, M. Maclin, stated that he had been in the employ of appellant for six months as a conductor and porter, and had handled the tickets sold by its agents in St. Paul over the line of appellant company out of St. Paul to points along its line elsewhere; that appellant runs its trains into St. Paul with cars bearing

the words "Canadian Pacific Railway Company" upon them. The constable, Poucher, who served the summons upon Mr. Lewis, testified that when he made service of the summons on Lewis he asked him if he was the ticket agent and was engaged in selling tickets for the Canadian Pacific Railway Company, and that Lewis stated that he was, whereupon the witness said, "You are the man I want," and served him with a copy of the summons.

Lewis deposed that he was the assistant general passenger agent of the Minneapolis, St. Paul & Sault Ste. Marie Railway Company in the city of St. Paul, and in its exclusive employment and service; that he had never been an agent of the said Canadian Pacific Railway Company; that he made no contracts, and collected and handled no money, for or on behalf of it, was under no bond to it, kept no accounts for it, was not on its pay rolls, and was not selected or appointed by it; and that appellant exercised no control over him whatever and was without power to discharge him.

We think it conclusively appears, from the various affidavits and evidence, that at the time of the service of the summons appellant did not own or operate any railway within the state of Minnesota; that by some traffic arrangement, which does not appear, the cars of appellant were run over the Soo road from the United States border line into the city of St. Paul; that Lewis was the agent of the Soo Company, and not of appellant, in the sense, at least, that he had any contractual relations with it. Whatever may have been the traffic arrangement between the two companies under which appellant's cars were sent into Minnesota, the business transacted by Lewis was not the business of appellant. Although the affidavits on behalf of appellant are somewhat equivocal, stating conclusions rather than facts, yet it was clearly established that the only tickets Lewis sold were joint tickets, good over the Minneapolis, St. Paul & Sault Ste. Marie Railway Company Line in the United States, and over the Canadian Pacific Line beyond. Lewis, therefore, represented appellant in the same manner that any ticket agent in the city of St. Paul may be said to represent any foreign company with which a local line may have traffic arrangements. The testimony of respondent and the other witness that they knew tickets were sold over the Canadian Line, and that they had taken up tickets over that line, does not con-

tradict the clear statement of the affidavits that the only tickets sold
were through joint tickets.

With reference to this state of facts we are required to construe
section 4110, R. L. 1905: "In any action or proceeding against a
railway company, whether domestic or foreign * * * service of
the summons and of all notices required to be served therein may be
made by delivering a copy thereof to any ticket or freight agent of
such company within the county in which the action or proceeding is
begun, with the same effect as though made pursuant to § 4109." Was
Lewis the agent, within the meaning of this statute? An agent en-
gaged in selling tickets at a union depot is an acting ticket agent, with-
in the meaning of section 5202, G. S. 1894, when the agent is perform-
ing duties for the roads doing business within the state. Hillary v.
Great Northern Ry. Co., 64 Minn. 361, 67 N. W. 80, 32 L. R. A. 448.
That decision was based upon the ground that the agent was perform-
ing the duties of a ticket agent for the Great Northern Railway Com-
pany, and that the company availed itself of his services. The Great
Northern Railway Company operated its trains into the union depot,
and its tickets were sold by means of the agents employed by the Min-
neapolis Union Railway Company, which company operated the de-
pot. The court laid some stress upon the use of the word "acting";
but that word is of no importance, and it was dropped in the Revis-
ed Laws of 1905. The distinction between an agent, as defined by
section 4109, and as defined by section 4110, R. L. 1905, was clear-
ly pointed out in Hillary v. Great Northern Ry. Co., supra. An agent,
under section 4109, is one having in fact representative capacity and
derivative authority. Wold v. J. B. Colt Co., 102 Minn. 386, 114 N.
W. 243; North Wis. Cattle Co. v. Oregon S. L. Ry. Co., 105 Minn. 198,
117 N. W. 391. But a ticket agent of a railway company, under sec-
tion 4110, is not necessarily one "in the eye of the law arising from a
contract of employment, and responsible to his principal and subject
to be discharged by it." To constitute an agency within the meaning
of section 4110, there must be a performance of duties for the bene-
fit of the company, or a performance of duties of which the company
avails itself. Such condition may occur in the absence of any con-
tractual relation. Although Lewis was not the agent of appellant
company, he might be a ticket agent within the meaning of the stat-

ute, provided it appeared that the company availed itself of the benefit of his services. He would be an agent, within the statute, if the railway company was operating a railroad, or trains, or cars, within this state, or if its cars came into the state under circumstances which would reasonably give rise to the inference that it was doing business in the state. A joint traffic arrangement, under which the Soo Line hauls the cars of appellant within the state, does not constitute the operation of a railroad; nor is it the transaction of business within the principle of the Hillary case.

Reversed.