STATE OF MAINE *vs.* CANADIAN PACIFIC RAILWAY COMPANY.

Penobscot.   Opinion July 8, 1926.

*Within the purview of the franchise tax law, the operation of a railroad consists in the transportation of passengers or freight, or both, by means of cars propelled by steam or other power and running upon rails.*

*Two different companies cannot well operate the same railroad at the same time, though both may use the same track, in part, to operate their respective roads.*

In the instant case notwithstanding that it does not own the track and that the Maine Central Railroad Company also uses the track, the Canadian Pacific Railway Company operates a railroad between Mattawamkeag and Vanceboro, and is liable to pay a franchise tax based upon the mileage between such stations.

On report. An action of debt to recover of the defendant corporation the amount of an unpaid tax balance of $38,566.30 for the year 1923, and a balance of $39,722.07 for the year 1924. The main contention between the parties involved the construction to be given to the word "operated" as used in Sec. 27 of Chap. 9 of the R. S., as amended by Chapter 42 of the Laws of 1917, which provides the method of determining the amount of the annual excise tax to be assessed against corporations operating a railroad in the State. The

cause was reported to the Law Court on agreed statement of facts. Judgment for the State.

The case fully appears in the opinion.

*Raymond Fellows, Attorney General,* for the plaintiff.

*Ryder & Simpson,* for defendant.

SITTING: WILSON, C. J., PHILBROOK, DUNN, DEASY, STURGIS, BARNES, JJ.

DEASY, J.   The State tax assessors levied upon the defendant as its annual excise tax for the year 1923 the sum of $158,958.85, and for the year 1924, $163,714.32.

The defendant admitted liability for and paid a large part of the tax of each year, leaving, however, unpaid and disputed a balance of $38,566.30 upon the tax of 1923 and $39,722.07 upon that of 1924. Hence this suit.

The parties disagree as to the proper basis of tax assessment. If the State is right in its contention judgment must be entered against the defendant for said balances plus interest. If the defendant's is the correct theory nothing is due.

In lieu of municipal taxes upon railroads, their property and stock, which are with some exceptions exempt from other taxation, railroad companies in this State are required by statute to pay an annual excise tax. R. S., Chap. 9, Sec. 26.   The rate of such taxation depends upon the gross transportation receipts per mile, the maximum being five and one half per cent.   It is not disputed that the defendant is liable to pay the maximum rate.

In all cases the tax is required to be assessed upon the gross transportation receipts in the State.   If the railroad is wholly within the State such gross receipts appear in the corporation's return to the Public Utilities Commission.   If it lies partly within and partly without the State such gross receipts are determined according to the following statutory rule:

"The gross transportation receipts of such railroad line or system as the case may be over its whole extent within and without the State shall be divided by the total number of miles operated to obtain the average gross receipts per mile, and the gross receipts in the State shall be taken to be the average gross receipts per mile, multiplied by the number of miles operated within the State."   Laws of 1917, Chapter 42.

. This case involves a construction of the section of statute next above quoted. In the last analysis its decision depends upon the meaning to be attached to the phrase "number of miles (of railroad) operated within the State."

Of nearly fifteen thousand miles of road used by the defendant something less than two per cent. namely, 233.70 miles are in the State of Maine. This includes 56.60 miles between Mattawamkeag and Vanceboro. The rest, 177.10 miles, which is owned and exclusively used by the defendant, is admittedly operated by it. It concedes liability for a tax based upon such mileage, and has paid it. But the stretch between Mattawamkeag and Vanceboro, it says, it does not operate, and so far as the tax is based upon the operation of such mileage it declines to pay.

The Maine Central line between Bangor and Vanceboro runs by way of Mattawamkeag. In 1887 the Atlantic & Northwest Railway Company, the defendant's predecessor, was about to build a line of railway through the State connecting with the Maine Central at or near Mattawamkeag. Because it was admitted by both corporations to be for "the mutual benefit and interest of both parties hereto to jointly use the track of that portion of the said railroad between Mattawamkeag and Vanceboro," a contract for such joint use was on February 4th, 1887 entered into between the Atlantic & Northwest Railway Company and the Maine Central Railroad Company. The defendant has succeeded to the rights and obligations of the former corporation.

It is unnecessary to recite in full any of the fifteen sections of the contract other than the first.

The first section is as follows:

"That said party of the first part (Maine Central R. R. Co.) hereby grants, conveys, leases and hires to the said party of the second part (Atlantic & Northwest Railway Co.) the right to use said railroad between Mattawamkeag and Vanceboro, as aforesaid, for all the engines and trains of cars that said party of the second part may desire to run over it, and to transport in and upon its said trains freight and passengers of every description between Mattawamkeag and Vanceboro; it being distinctly understood and agreed that said party of the second part hereby acquires and shall enjoy full, free and equal running powers over the said railroad between Mattawamkeag and Vanceboro as aforesaid; it being further understood

and agreed that, limited only by the necessary conditions of joint operation and the equal rights of the party of the first part, these running rights shall be as full and free as if the line were its own property between the points named; it being however expressly provided and agreed that the trains, engines and cars and conductors, enginemen and other employes of the party of the second part connected with such trains, engines and cars, shall, while on the joint line, be subject to the rules and regulations of the party of the first part, and to the orders of the Manager, Superintendent, Train Masters, Train Despatchers and all other officers of the party of the first part, in all matters relating to the movement of trains or in any way affecting the safe and proper working of said joint section, and said conductors, enginemen and other employes, shall, on demand of said party of the first part, be dismissed and discharged for violating the rules of said party of the first part or the orders of its officers aforesaid, and provided further that all employes at the stations, and all trackmen and other employes of said joint section, shall be appointed by the party of the first part, but shall be subject to dismissal and discharge on the reasonable complaint of the party of the second part, the ground of such complaint being stated; and provided further that all employes on said joint section, other than trainmen, shall be deemed joint employes, and shall under no circumstances favor one company at the expense of the other, but shall give equal care and attention to forwarding the business of both."

The fourth section agrees that the party of the second part shall provide its own side tracks and other facilities at Mattawamkeag. At other points side tracks and other facilities built or to be built by the party of the first part to be jointly used.

The sixth section provides that the party of the second part shall "pay its proportion, reckoned on the basis of wheelage computed in the usual manner, of the following expenses: Repairs, maintenance and renewal of track, roadway, bridges, superstructure, buildings, water stations, fences and other structures, wages of all station men, signal men, track men, all station, track or other expenses necessary to the safe and convenient maintenance and working of said section used jointly. Repairs and renewals to be done by the party of the first part and paid for jointly as above.

The eighth section agrees that the cost of reduction of gradients, new sidings and changes in bridges "necessary to afford safe and

convenient passage for the engines and cars of the party of the second part and other work of similar nature which is to be done before connection is made between the tracks of the two parties is to be paid for equally.

We roughly summarize the other eleven sections as follows:

The party of the first part to prepare all schedules and time tables subject to change at the request of the party of the second part so far as they relate to its trains; semi-annual rental to be paid figured at five per cent. per annum of one half of the agreed cost of the road; each party to provide its own trains and train crews and to be solely responsible for damages caused by the negligence of its servants; purely local traffic over the joint section conceded to the party of the first part; trains of the party of the second part not required to stop between Mattawamkeag and Vanceboro for the accommodation of local passengers; no discrimination by agents; disputes to be arbitrated; contract subject to annulment for default.

The contract also sets forth that it shall continue in force for twenty years, with right of renewal at the option of the party of the second part. The contract and option were renewed for twenty-five years, terminating in 1932.

We need not say that the tax sought to be recovered is an excise tax, a tax not upon property but privilege. It is a tax upon the privilege of exercising franchises, to wit, doing railroad business in the State of Maine. Railroad business consists in transporting passengers and freight by means of cars propelled by steam or other power and running upon rails. This is precisely the business which the defendant and its predecessor have for nearly forty years been doing between Mattawamkeag and Vanceboro, as well as elsewhere. True, the section of track in question is used by the defendant jointly with the Maine Central Railroad Company, which is also subject to the tax. The State might forbid such joint use. It does not forbid but permits it. The privilege of joint use is apparently worth more than the privilege of running on separate tracks. The two corporations emphasize this in their contract. They say in the preamble of the contract that it is "for the mutual benefit and interest of both parties hereto to jointly use the track."

This is clearly true. Such joint use is for their mutual benefit and interest. Otherwise each would have to pay interest on the whole instead of half the cost of the right of way, roadbed and rails. Other-

wise each would have to pay the entire cost of all repairs, maintenance and renewals of track, etc., and the whole of the wages of station men, signal men, and the whole of station, track and other expenses "necessary to the safe and convenient maintenance and working of said section to be used jointly." Instead of having to pay the whole of these expenses each company pays only "its proportion reckoned on the basis of wheelage." Such joint use is indeed for the mutual benefit and interest of both parties.

Of course the benefit of joint use might be offset by loss of revenue. But apparently it is not. It does not appear that any fewer or smaller trains are run over the joint section than would be run upon separate tracks. The defendant suffers no loss except in conceding purely local traffic. This would be partly lost if the trains of the two roads were run on separate tracks.

This loss, if any, was considered and discounted when the contract providing for joint use was made "for the mutual benefit and interest of both parties."

If the value of the privilege enjoyed is to be considered the joint section should be included as a basis of taxation.

The defendant admits that it in 1923 and 1924 was and now is using the track between Mattawamkeag and Vanceboro to transport passengers and freight for revenue by means of locomotives and cars running over rails. It also admits "that, limited only by the necessary conditions of joint operation and the equal rights of the party of the first part, these running rights (are) as full and free as if the line were its own property between the points named." But the defendant contends that the enjoyment of these privileges and the carrying on of such business is not "operating a railroad." The defendant's learned counsel quotes various definitions of the word "operate." One definition quoted is from Webster's New International Dictionary, namely, "To put into or continue in operation or activity." He also quotes definitions of the word "railroad" and from these draw the conclusion that "to operate a railroad then would seem plainly to be to manage or control one of the above three objects, the track, the whole system or the corporation owning the same."

Our problem is to determine what the Legislature meant by the phrase "number of miles operated within the State."

It did not use the term "railroad" as meaning the corporation because corporations cannot be measured by miles. It did not use

the term as meaning the entire system because the statute that we are considering expressly relates to a part of a railroad system. It could not have meant the track because the authoritative definition which the defendant's counsel has furnished us, namely, "To put into activity" forbids. The Legislature can hardly have contemplated that a railroad track independently of its rolling stock would be "put into activity." One cannot resist the apprehension that an active railroad track would be, to say the least, unsafe.

The Legislature in the use of the words "number of miles operated" undoubtedly referred to the transportation of passengers and freight by means of cars propelled by steam or other power and running upon rails. This idea has been expressed in different forms by several courts. "Cars and other appliances are required in order to make or operate a railroad." *Colonial City Traction Co.* v. *Kingston Railroad Co.*, 153 N. Y., 548. "A railroad is only operated within the meaning of the law by moving trains, cars, engines or machinery on the track." *Conners* v. *Railway Co.*, (Iowa), 82 N. W., 953. "The result to be accomplished by the operation of a railroad is the running of trains." *Railway Co.* v. *Wells*, (Texas), 275 S. W., 220. "Can there be any doubt of what is meant by operating a railway? Does the phrase not at once convey to every intelligent and impartial mind the idea of putting the railway in actual use in the business or employment for which it has been constructed?" *Lane* v. *Railway Co.*, (Iowa), 180 N. W., 899.

The cases cited in the briefs are not precisely in point, nor are they claimed so to be by counsel.

*Ingersoll* v. *Railway Co.*, 157 N. Y., 453, holds that a right vested by charter to contract with other roads to permit use of track by them cannot be impaired at the behest of abutting owners. *Heron* v. *Railway Co.*, (Minn.), 71 N. W., 706, decides that a licensor railroad is responsible for the negligent setting of fires by its licensee.

Both of the above cases are plainly irrelevant. *Slaughter* v. *C. P. Railway Co.*, 106 Minn., 263, (119 N. W., 398). "A joint traffic arrangement under which the Soo Line hauls the cars of the appellant (C. P. Railway Co.) within the State does not constitute the operation of a railroad" by the appellant. If the Maine Central Railroad Company hauled the defendant's cars over the joint section, so called, this case would be in point, but in such a situation the gross transportation receipts of the Maine Central subject to taxation would

be much enhanced.   *Stone Company* v. *Oman*, 134 Fed., 450.   In the opinion this language appears:   "The complete control and management of the track  .  .  .  .  is the very essence of operating a railroad."   This language is the dictum of a single District Judge in a case not involving taxation and in which no railroad is a party.

*Quincy Railway Co.* v. *People*, (Ill.), 41 N. E., 162.   This case cited by the State is much more nearly in point.

The appellant owning a station and other structures in Quincy was taxed by the local assessors and also by the State Board.   It was liable to be taxed by one, not by both.   Under the statute if it were "operating a railroad" in the State the tax imposed by the State Board was the legal tax.   It owned no main track in Illinois.   It brought its trains in over the rails of the C. B. & Q. Railway Co. under a "lease or agreement," not more definitely described.   Held: That it operated a railroad in the State.   "Every train run by the appellant carrying passengers and freight over the C. B. & Q. railroad was an act of operating a railroad in this State."

Paraphrasing this language, every train run by the Canadian Pacific Railway Company carrying passengers or freight over the Maine Central line between Mattawamkeag and Vanceboro was an act of operating a railroad in this State.

It is immaterial that another railroad is operated upon the same track "for the mutual benefit and interest of both."   "Two different companies cannot operate the same railroad at the same time, though both may use the same track in part to operate their respective roads." *Traction Co.* v. *Railroad Co.*, 153 N. Y., 548.

By Act of 1921, Chapter 71, the entire tax is payable on the 15th day of June next after the levy is made.   R. S., Chap. 9, Sec. 75 fixes the rate of interest on deferred payments at ten per cent.

> *Judgment is ordered for the State for $38,566.30 with interest at ten per cent. per annum from June 15th, 1923, and for $39,722.07 with interest at the same rate from June 15th, 1924.   Interest to be computed to the date of judgment.*