## New Bell Jellico Coal Company v. Sowders.

(Decided May 28, 1913.)

### Appeal from Bell Circuit Court.

1. Mines and Mining—Props—Where to be Furnished—Duty of Mine Owner—Subsection 7 of Section 2739b, Ky. Statutes.—It is

the duty of the mine owner to furnish props at the place where the miner is at work.

2. Mines and Mining—Props—Negligent or Willful Failure to Furnish—Action for Damages—Subsection 7 of Section 2739b, Ky. Statutes.—In a civil action for damages a person injured may recover of the mine owner for either a negligent or willful failure to furnish props as required by subsection 7 of section 2739b, Ky. Statutes.

3. Mines and Mining—Instructions.—Where the mine owner fails to furnish props but the miner nevertheless continues at work, an instruction telling the jury to find against the plaintiff on that account unless they believed from the evidence that the defective roof in the mine and the dangers therefrom were so obvious as that none but the reckless would have remained therein and proceeded to work thereunder, is erroneous and prejudicial. The correct rule is that the owner is still liable, unless the danger from the lack of props is not only imminent, but so obvious that an ordinarily careful man would not have worked under the circumstances.

WILLIAM LOW and O'REAR & WILLIAMS for appellant.

PITZER D. BLACK and BLACK, GOLDEN & OWENS for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

In this action for damages for personal injuries plaintiff, William H. Sowders, obtained a verdict and judgment against the New Bell Jellico Coal Company in the sum of $2,000. The defendant appeals.

The action was predicated on defendant's failure to furnish plaintiff props for securing the roof of the mine where plaintiff was at work. The defendant denied the allegations of the petition and also pleaded contributory negligence.

The facts are as follows: Plaintiff and other employes were engaged in removing columns of coal commonly known as stumps or pillars, which were left in the mine to support the roof. He was at work at the time at a place from 8 to 12 feet from the last props. The props should have been about 3 feet apart. While so engaged, a large piece of slate fell and struck plaintiff, severely injuring him. It appears that the company kept its props outside of the mine at points under the incline. When the miner desired props he would go to this place, select those desired, mark them with the number of his working place and load them in the empty

cars returning up the incline. Other employees of the company would place the car of props near the drift mouth of the mine on the track ready to be hauled by the drivers into the working place indicated on the props. The drivers would then haul the props to the place indicated. On the afternoon of the day before plaintiff was injured he left his working place and went outside to select his props. Having selected and marked them he began to load them on one of the empty cars, but was advised by the drum man not to do that as that car was not going to his working place. Plaintiff remonstrated with the drum man for not taking his props in and then went back to his place of work. Shortly thereafter he came out of the mine, went down the incline and loaded his props, at the same time marking them so as to indicate where they were to be taken. The drum man stopped the car for the purpose of enabling plaintiff to load the props. After they were loaded the car was drawn up the incline and placed on a switch near the drift mouth where the driver whose duty it was to take them to plaintiff's working place could get them. The drum man told the driver that the car contained props for plaintiff's working place. Instead of taking the props to plaintiff's working place one of the drivers took them to the working place of a man by the name of Ricketts, who was employed in another entry. Ricketts, although he had not ordered any props, unloaded the props and used them at his working place. The props were marked with the figure "2" and the letter "L," designating the second left entry. The driver in taking the props to Ricketts passed by plaintiff's working place. Plaintiff's witnesses further testified that plaintiff took his pick and sounded the roof, and that he and the others inspected the roof to see if there were any cracks. His purpose in testing the roof with his pick was to see if there was any drummy slate. This was the usual way of making the test. Defendant's foreman testified that plaintiff's injury was caused by a piece of slate falling on him, and in his opinion had the roof been tested, the slate would have sounded drummy. The only exception to this is in the case of bells, kettles and horsebacks. The piece of slate in question was not of this kind.

Section 2739b, Kentucky Statutes, subsections 7 and 8. are as follows:

Sub-sec. 7.

"Each owner, lessee or operator of every mine to which the mining laws of the State apply, shall provide and furnish to the miners employed in said mine a sufficient number of caps and props, said props to be sawed square at each end, to be used by said miners in securing the roofs in their rooms, and such other working places where by law or custom of those usually engaged in such employment it is the duty of said miners to keep the roof. propped, after the miner has selected and worked the same."

Sub-sec. 8.

"Except as herein otherwise provided, any willful neglect or failure or refusal of any owner, lessee or operator of a coal mine, or of any person employed in such mine, to comply with the provisions of this act affecting such owner, lessee, operator or person, or any attempt to obstruct or interfere with any person in the discharge of the duties imposed on such person, shall be deemed a misdemeanor, punishable by a fine of not less than one hundred dollars, and not more than two hundred dollars."

For the defendant it is insisted that it complied with subsection 7 *supra* by actually furnishing props to plaintiff at the mouth of the mine. In our opinion this was not a compliance with the statute. The props are heavy. The duty of transporting them is not imposed on the miner. His only duty is to prop the roof. The statute contemplates that the mine owner shall furnish the props at the place where they are to be used. In no other way can the purpose of the statute be effectuated. Not only so, but this was the custom of the mine. The mine foreman, Mr. Cox, so testified. This duty cannot be delegated. The negligence of the driver in failing to deliver them was the negligence of the master. 4 Thompson on Negligence, sec. 4182; White's Per. Inj. in Mines, sec. 26; Curvin v. Grimes, 132 Ky., 559.

While it is true that subsection 8 *supra* imposes a penalty only in the event of willful negligence or failure or refusal to comply with the provisions of the act, that section is applicable only in case of a criminal prosecution. Section 466 of the Kentucky Statutes provides that a person injured by a violation of a statute may recover from the offender such damages as he may sustain by reason of the violation, although a penalty or for-

feiture for such violation be thereby imposed. For either a willful or negligent violation of the statute in question a person thereby injured may recover damages in a civil action. In those jurisdictions where the statute itself gives a right of action only in the case of willful negligence, a different rule prevails. Odin Coal Co. v. Denman (Ill.) 76 Am. St. Rep., 45.

Complaint is made of instruction No. 5, which is as follows:

"Although you may believe from the evidence that the defendant failed to provide and furnish to plaintiff the props as required by instruction No. 1, and that by reason of such failure, the place where plaintiff was at work was dangerous, and that plaintiff knew thereof, yet, you should not on that account find against the plaintiff unless you shall believe from the evidence that the defect in the roof of the mine at the place where he was and the dangers therefrom were so obvious as that none but the reckless would have remained therein and proceeded to work thereunder."

It will be observed that the foregoing instruction relieves the plaintiff from any negligence in working without the props unless the danger therefrom was so obvious as that none but the reckless would have remained therein and proceeded to work thereunder. Where the master fails to furnish props and the servant nevertheless remains at work, the correct rule is that the master is still liable for any injury caused by lack of props, unless the danger therefrom is not only imminent, but so obvious that an ordinarily careful man would not have worked under the circumstances. Low v. Clear Creek Coal Co., 140 Ky., 754. Recklessness is something more than a failure to exercise ordinary care. It more nearly approaches gross negligence, which is certainly not the standard by which the employee's duty is to be measured. We are, therefore, of the opinion that the instruction did not properly present the law of the case. Plaintiff's own evidence shows that the props should not have been further apart than a man's body. He was working at a place between 8 and 12 feet from the last props. While claiming that he tested the roof and found nothing to indicate that it was likely to fall, defendant's evidence shows that had such a test been made the true condition of the roof would have been disclosed. Notwithstanding this fact he remained at work. The instruction in question presented the only defense the defendant had, yet

presented it in such a form as to excuse defendant only in the event that plaintiff was reckless. Under these circumstances we conclude that defendant's substantial rights were prejudiced.

Judgment reversed and cause remanded for a new trial consistent with this opinion.