### Left Fork Coal Company, et al. v. Owens' Adm'x.

(Decided October 9, 1913).

Appeal from Bell Circuit Court.

1.  Mines and Mining—Statutory Duty of Mine Owner.—Under sec-
    tion 2739-b of the Kentucky Statutes it is the duty of the mine
    owner to provide and furnish to the miners employed in the mine
    a sufficient number of caps and props to protect the roof, and the
    failure to so furnish this timber is actionable negligence.
2.  Mines and Mining—Contributory Negligence of Miner—Failure to
    Furnish Props.—Where the mine owner fails to furnish props
    when needed and requested, and the miner is injured by reason
    of this failure, the fact that he was working without the props
    when injured will not defeat a recovery on his part unless the

danger of working without props was so imminent and obvious as that an ordinarily careful man would not have worked under the conditions.

3. Mines and Mining—Duty of Mine Owner as to Timber—Contributory Negligence.—The first duty is on the mine owner to furnish the timber needed, and he can only escape liability for failure to perform this duty when the negligence or carelessness of the miner in continuing to work in the face of an imminent or obvious danger is so apparent that an ordinarily prudent miner would not have engaged in it.

4. Mines and Mining—Furnishing Timber—Sufficient Request for.— When it is the habit or custom in a mine for the miners to select from timber furnished by the mine owner the pieces they need, and mark them so as to indicate the room for which they are intended, and place them at a point set apart for that purpose, to be carried where they are needed, if a minor so selects and marks and places timber needed, this will be treated as a request for the timber and notice to the mine owner that it is needed.

5. Evidence—Intoxicated Condition of Mine Boss.—In a suit by a miner to recover damages for injuries not caused by the intoxicated condition of the mine boss, it is not competent to show the habitual intoxication of the mine boss, but it is competent to show that he was intoxicated when certain things occurred concerning which he testified.

6. Evidence—Witness—Contradiction of—Construction of Section 596 of the Code.—Under Section 596 of the Code a party introducing a witness may contradict him by other evidence and by showing that he has made statements different from his present testimony. But it is only competent to thus contradict the witness when he states substantial and material facts prejudicial to the party introducing him. If the witness merely denies having made the statements attributed to him or merely states that he has no recollection of making them, his answers cannot be treated as prejudicial and therefore it cannot be shown by other witnesses that he made statements differing from those attributed to him in the questions to which he gave negative answers.

METCALFE & JEFFRIES for appellants.

BROWN & NUCKOLS, B. B. GOLDEN for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

George Owens, a miner working for the appellant coal company, was injured on Tuesday morning, March 29th, by slate falling from the roof of the room in which he was working, and from the effects of the injuries so received he died some months later. In this suit by his administratrix to recover damages for his death, the jury assessed the recovery at ten thousand dollars, and

from the judgment entered thereon this appeal is prosecuted by the coal company.

The deceased at the time of his injury was about 39 years of age and a miner of long experience. When injured he was working in a room in which he had been mining for some time previous. It appears that the method of mining was to undercut the seam with picks and then bore holes at the top of the seam and place therein charges of powder sufficient to knock down all the coal between the shot at the top of the seam and the undercut at the bottom of the seam. On Tuesday morning Owens went into the room to begin his work, and after testing the roof of the mine, as there is evidence to show, he struck a few licks with his pick in the face of the coal, when a large piece of slate fell on him from the roof.

In his petition the grounds of action relied on are, that the coal company committed a breach of its duty towards him in failing to furnish for his use and protection a sufficient number of timber props and caps to support the roof of the mine at the place he was working; that Roark, the mine foreman, was habitually drunk for many months before and up to the time of the accident, and consequently unfit to perform his duties as mine foreman, and the officers of the coal company knew this habit of the mine foreman; that Owens complained to the mine foreman of the unsafe condition of the roof and requested that he furnish him timber to prop it, but was assured by the foreman that the roof was not dangerous and he could work with safety in the manner indicated by the foreman, who also promised to furnish the necessary timber.

The answer was a traverse and plea of contributory negligence.

There was evidence in behalf of Owens' estate showing that it was the custom of the miners at this mine, when they needed timbers to prop the roof of the room in which they were working, to go to a large pile of timber supplied by the coal company and placed near the mouth of the mine and select such timber as they needed, and place the same near the track on which cars ran to and from the rooms, marking the timber in such a manner as to indicate the room at which it was needed, and then the timber so marked and placed would be hauled by a driver to the designated point. It was also shown that this custom and habit of the miners was known to

and approved by the company, who treated the placing and marking of timber as notice by the miners that the timber was needed for protection in places at which they worked. That Owens, believing that it was necessary to prop the room, on Thursday morning preceding the day of the accident, went to the pile of timber furnished by the company and selected and marked with his room mark such timber as he needed and placed it in the usual way for the driver to carry to his room. That the driver did not deliver the timber on Thursday as he should have done, and Owens, on account of the failure to have the timber to prop his room, did not work on Friday. That he complained about the failure to get timber to Roark, the foreman, who told him to go ahead and make light shots, which he might do without danger, until they could get the timber for him. That on Monday he did some work in the room, after making an inspection of the roof in the usual manner, and on Tuesday morning returned to the room, the timber not yet having been delivered, and, after making some inspection of the room, proceeded to commence operations, and had only been engaged in work a few minutes when a large piece of slate, extending back perhaps six or eight feet from the face of the coal, fell on him. That the roof had been propped to within ten or twelve feet of the face of the coal, although it should have been propped to within about four feet of the face of it, and would have been so propped if the timber had been furnished. That if the roof had been propped as it should have been, the slate would not have fallen. That the danger in working as he did, although the roof was not supported, was not so obvious or imminent that a person of ordinary experience and prudence would not have undertaken it.

On the other hand, the evidence for the company was in substance that Owens did not request that he be furnished any timber or select or mark or place in the usual way any timber to be taken to his room, but notwithstanding this, the company had furnished him in his room before the accident such timber as was needed, but he had failed to use it in propping the roof. That he was not given any direction by Roark, the mine foreman, as to how he might work in safety without propping the roof of the mine. That he was an experienced miner and could have discovered by exercising care whether the roof was safe or not, but that he failed to make the

proper and usual tests to determine its condition, and that his injury was the result of his own negligence in not requesting timber to prop the roof, or in working in the room without props, if it was dangerous, or in not making the usual tests for the purpose of ascertaining the condition of the .roof.

With the evidence in the condition indicated, we think the court properly refused, on the motion of the coal company, to direct a verdict in its favor, because if the company failed to furnish the timber .when requested, or if Owens was directed by the mine foreman how he might continue to work in safety without the roof being propped, and the danger in so working was not so obvious that a man of Owens' experience would not have undertaken it, the company .was guilty of such actionable negligence as to authorize the jury, under proper instructions, to determine the question in issue and decide accordingly. The verdict of course indicates that the jury accepted the theory advanced by the wit-- nesses in behalf of Owens' estate, as they could not well have found a verdict against the company if they believed the statements of its witnesses, as the evidence of its witnesses showed that the company was free from negligence in every particular.

The court, after refusing a number of instructions offered by counsel for both parties, on its own motion told the jury in substance that it was the duty of the company. and its foreman, Roark, to provide and furnish. Owens at his working place in the mine a sufficient number of props and caps to be used by him in the support of the roof, within a reasonable time after he had notified them that he needed the same, and after he had marked and left the timber he needed at the customary and usual place, and that if they believed that the coal company failed to furnish and provide the timber requested, within a reasonable time after receiving notice that it was needed, and within a reasonable time after it had been laid out and marked, and the roof of the mine fell as a direct result of this failure, they should find against the company.

They were further told that it was the duty of Owens to set the timbers in proper place in his room after they had been furnished to him by the company, if they were furnished, and also his duty "to exercise ordinary care for his own safety and protection while working in said mine," and if they believed that the accident was due

to his failure to prop the roof with the timber furnished to him, if any, or to exercise the care indicated, they should find for the company. They were further told that although the roof of the mine was in a dangerous and unsafe condition as the result of the failure of the company to furnish the necessary timber, they should not find against Owens' estate on this account unless they believed that "said unsafe condition of said roof was so obvious and dangerous as that an ordinarily prudent person would not have gone to work there at the time and under the conditions when said Owens received said injury."

They were further told that although they might believe from the evidence that Owens, at the time he was injured, was performing his work under and according to the direction of Roark, the mine foreman, and that the said method and manner of work was unsafe and dangerous, this did not authorize them to find against the estate of Owens unless they further believed that the unsafe condition was so obvious and the danger therefrom so imminent as that an ordinarily prudent person would not have undertaken the performance of the labor in the way and manner directed by Roark.

Coming now to consider the principal grounds of reversal relied on by counsel for the company, they are (1) error of the court in admitting evidence as to the excessive use of intoxicating liquors by Roark, the mine foreman; (2) error in permitting Bowman, who was boss track layer, and also acted at times as assistant mine boss, when introduced as a witness for Owens' estate, to be asked by council for the estate questions respecting certain alleged statements he had made to Owens, and in permitting the introduction of other evidence to contradict or impeach the answers made by Bowman to these questions; (3) error in giving and refusing instructions.

Roark, the mine foreman, testified that there were no timbers laid out and marked for Owens' room that had not been delivered to him. That he examined the room about two hours after Owens was injured, and the condition of the roof showed that Owens, by making any kind of an inspection, could have discovered that it was unsafe and dangerous. He further said that he had never given to Owens any directions to go ahead with his work and make light shots until they had time to deliver the timber.

During the introduction of evidence for the estate a number of witnesses, in fact nearly all of them, were permitted, over the objection of counsel for the coal company, to testify that Roark was an habitual drunkard and had been frequently incapable of attending to his duties as mine foreman for several months continuously before Owens was injured and up to the time of his injury.

Roark only testified to three material circumstances in the company's defense. One was that he had not given to Owens the directions referred to; another, that Owens had not placed any timber, on the Thursday preceding his injury, to be hauled to his room; and yet another related to what he said respecting the condition of the roof at the time Owens was hurt. And it was admissible, for the purpose of affecting the credibility of Roark and the weight that the jury might attach to his evidence, to show that at the time he gave to Owens the directions attributed to him he was under the influence of liquor, and to show that on Thursday and between that day and the Tuesday following, he was in such condition from the use of liquor as not to know whether or not Owens had marked and placed his timber, and to show that on Tuesday morning, when he inspected the mine roof, he was unable, on account of his intoxicated condition, to appreciate or understand the condition of the roof, and to show that he was so intoxicated at these times as not to know what he was doing or remember what he said, or be capable of having a distinct recollection, or any recollection, of the true facts in reference to these matters.

But only with reference to the time when these things occurred was it competent to prove the intoxicated condition of Roark. The fact that he was intoxicated on many other occasions was entirely irrelevant to the issues in the case as made by the evidence and the instructions. It is also manifest that the evidence showing his intoxicated condition on other occasions and his habit of drunkenness was very prejudicial to the coal company, and also apparent from the number of witnesses who were asked in detail about the habit of Roark that counsel for Owens' estate appreciated the damaging effect this evidence would have on the minds of the jury in prejudicing them against the coal company for having in its employment a person so unfit as this evidence showed Roark to be.

When Bowman, who was introduced as a witness for Owens' estate, was being examined in chief, he was asked these questions by counsel for the estate: "Q. I will ask you if on various occasions at the residence of George Owens, where he lay there crippled from that injury, and a short time after he was injured up until he died, if you didn't say there in the presence of his wife, in the presence of Lacy Abner, and his wife, and George W. Philpot, Mrs. Owens' father, I didn't mean all together, if George Owens didn't say to you in words or their substance, he didn't believe he would get well, and that he wanted you to come here and tell the truth about how he was injured, and then he would go over it and say when he went in there you told him to clean up the roadway, and you would say, yes, and then you told him when he got that cleaned up and knocked down his loose coal, by that time you would have his track laid up and would have the driver come in and bring his timbers in, and when he would go over it with you in the presence of the persons named that you would say, yes, and when he died you would come here and testify to that? A. No, sir, I did not."

He was also asked if George Owens did not say to him the night before he died, and if he did not agree with him, that he told him to clean up the roadway and to then knock down his shot coal and by that time he would have enough track laid to have the driver bring his timbers in, and that he went ahead and cleaned up his roadway and took his pick and sounded the roof all the way to the face of the coal and struck one or two light licks, and that it fell on him, and didn't you then say, yes, that was the way it occurred, and didn't he then ask you if you would come here and testify to that, and didn't you say to him to not be a bit uneasy in the world about that, that you would come here and say what you told him? A. I don't remember it if I did."

Other questions of similar import were asked Bowman, and in response to them he said either that he did not make the statements attributed to him and embodied in the questions, or if he did make them, he had no recollection of them.

After this Mrs. Owens, Philpot and Abner and his wife were introduced as witnesses for the estate over the objection of counsel for the coal company, and were each asked if they were not present when the conversations embodied in the questions propounded to Bowman

took place, and if Owens and Bowmen did not make the statements set out in these questions, and they each answered that they were present, and that the conversations mentioned did take place. This evidence was clearly incompetent, and that it was very prejudicial is not open to doubt. Section 596 of the Civil Code provides that:

"The party producing a witness is not allowed to impeach his credit by evidence of bad character, unless it was indispensable that the party should produce him; but he may contradict him by other evidence, and by showing that he has made statements different from his present testimony."

Under this section it has been frequently ruled that if a witness introduced by a party states substantial and material facts prejudicial to the party introducing him, it may be shown by other witnesses that he has made statements different from his testimony, but unless he does so it is not competent to contradict him. Here Bowman did not make any statement or give any evidence prejudicial to the interest of the party introducing him. He merely said that he did not make, or had no recollection of making, the statements attributed to him. His answers being negative could not have been prejudicial, and, under repeated decisions of this court, it was incompetent to show that the conversations put in the questions had occurred between Owens and Bowman. If Bowman had said in his examination that Owens told him that he did not put his timbers out or mark them, or that he did not test the roof of the mine, or that he did not need any props, or that the accident was due to his own want or care, or any other like prejudicial statement, then it would have been entirely permissible to show, after laying the ground for it, that Bowman had made statements in conflict with his present evidence upon these material points. But when a witness denies having made the statement attributed to him or denies having any recollection of having made it, his answer cannot be tortured into evidence prejudicial to the party introducing him, nor can he be contradicted by showing what he said at other times.

If the method pursued in this case were allowable, a party could get before the jury hearsay evidence of the most damaging character by merely putting in the mouth of the witness certain statements, and then when he denied having made them, prove by others that he did. In

this case this manner of interrogation in effect brought before the jury as competent evidence declarations made by Owens the night before he died and when he knew he was going to die. If this indirect manner of getting these declarations of Owens before the jury were permissible, it would likewise be proper to put witnesses on the stand and have them detail conversations they had with Owens in which he related the manner in which the accident occurred. Champ v. Commonwealth, 2 Met., 17; Loving v. Commonwealth, 80 Ky., 507; South Covington & Cincinnati Street Ry. Co. v. Finan's Admx., 153 Ky., 340. Nor did the admonition of the court, that this contradictory evidence was only competent for the purpose of contradicting Bowman, have the effect of curing the error. An admonition such as was given by the court is proper when it is permissible to contradict the witness. But when it is not permissible to contradict the witness at all, then of course offered contradictory evidence should be excluded, and there is no occasion for an admonition by the court as to the effect of such evidence.

The instructions of the court are complained of, but we think they followed substantially the law as laid down in Low v. Clear Creek Coal Co., 140 Ky., 754; Goins v. North Jellico Coal Co., 140 Ky., 323; New Bell Jellico Coal Co. v. Sowders, 154 Ky., 101. As announced in these cases the statute puts on the mine owner the peremptory and non-assignable duty of furnishing to the miners the caps and props necessary to protect the roof of the room or place at which they are working when so requested to do by the miners, and if a miner is injured by the failure of the mine owner to perform this duty, he may maintain an action to recover damages for the injury so sustained, unless it be that his own contributory negligence will defeat a recovery. As set out in these cases, this contributory negligence exists when the danger from working without props is not only imminent, but so obvious that an ordinarily careful man would not have worked under the conditions. In other words, the first duty is on the mine owner to furnish the timbers needed, and he can only escape liability for failure to perform this duty when the negligence or carelessness of the miner in continuing to work in the face of an imminent or obvious danger was so apparent that an ordinarily prudent miner would not have engaged in it.

· · ˙ For the reasons indicated, the judgment is reversed, with directions for a new trial in conformity with this opinion.