# Louisville & Nashville Railroad Company v. Cooper.

(Decided May 5, 1915.)

## Appeal from Whitley Circuit Court.

1. Negligence—Violation of Statute.—One who sustains an injury from the violation of a statute, may recover damages, if the violation of the statute was the direct and proximate cause of the injury, whether the statute imposes a penalty for its violation or not.

2. Nuisance—Right of Individual to Recover for Public Nuisance.— One can not maintain an action against another for the creation or maintenance of a public nuisance on account of an injury or inconvenience, which is common to all the community alike, but may maintain an action for an injury suffered from the creation or maintenance of a public nuisance, where he has suffered some special damage or injury thereby.

3. Damages—Duty of Person Injured to Prevent or Reduce.—One seeking the recovery of damages on account of an injury incurred, must have exercised such care as an ordinarily prudent person under like or similar circumstances would have exercised to have avoided receiving the injury.

4. Negligence—Contributory Negligence as Bar to Recovery of Damages.—If one's own negligence is the cause of the injury, or if his own negligence so contributes to his injury, that but for his own negligence, the injury would not have been received, he is not entitled to recover.

5. Damages—Duty of Person Injured to Prevent or Reduce.—When one has suffered an infraction of his rights, it is his duty to act in such a way as to minimize his loss and make his damage as light as possible.

HYRAM H. TYE and BENJAMIN D. WARFIELD for appellant.

J. M. ROBSION for appellee.

OPINION OF THE COURT BY JUDGE HURT—Reversing.

The main street of the town of Corbin is Center Street, which runs from west to east, and is crossed by the Louisville & Nashville Railroad, which runs north and south. On the night of December 18th, 1912, which was a cold night with snow on the ground, the appellee, Mrs. Isabella D. Cooper, who resided on Poplar street, on the west side of the Louisville & Nashville Railroad, went from her home to the postoffice in Corbin, which is on the east side of the railroad, and on Center street. The postoffice is less than a block from the railroad crossing over Center street. The appellee was a stout,

robust woman, weighing about 175 pounds at that time, and comfortably and warmly dressed, and accompanied by her daughter, who was about twenty-one years of age. After going to the postoffice she started to return to her home by way of Center street, and when she arrived at the railroad crossing she found the street blockaded by a freight train of considerable length, which was standing upon the track. There was no other very convenient or accessible way for a lady going from the postoffice to reach the home of Mrs. Cooper, except by the way of Center street, and over the railroad crossing over the street. On the east side of the railroad crossing, and about ten steps from the crossing was Blair's store, and about fifteen steps from the crossing was Candler's restaurant, and between that and the postoffice was the Wilbur Hotel, and in the same building with the post-office was Green's store. The evidence does not certainly show whether Blair's store and Green's store were open or not at the time appellee came to the railroad crossing, but it is undisputed that Candler's restaurant and the Wilbur Hotel, and the postoffice were all open and comfortably warm, and were respectable places. On the other side of Center street from these buildings was another store, and, also, a dwelling house. The evidence introduced by the appellee shows that when she arrived near to the railroad crossing, and five or six steps from the restaurant, she discovered the train across the street, and remained standing there for about ten minutes, as she states, expecting that it would be moved out of the way. Becoming cold, she and her daughter walked back past the restaurant and the store houses, and the hotel, down to the corner about a block away from the crossing, and returned, as she says, to keep from growing cold. When she returned to the crossing the train was still across the street, and did not move for from ten to fifteen minutes, when it backed back towards the depot, and she went from there to her husband's store, and from there to her home. She proved by her own testimony that she was chilled by standing waiting for the train to move, and the next morning had a pain in her back, and headache, and a cold, which confined her to her bed for three or four days. In this she is corroborated by her daughter and husband's father, and another relative. After that she claims to have suffered from this cold and was affected with ca-

tarrh, and was at times confined to her bed, but she did not call a physician, nor seek the services of one, until in the following November or December, nearly one year thereafter, when her husband visited a physician, and got him to prescribe a remedy for scanty menstruation, from which she claims to have been suffering. This suit was filed on December 13th, 1913, and was tried on the 12th day of March, 1914, but the appellee did not have the services of a physician at any time, until the night before the trial, when a physician was sent for, though she claims that she used patent medicines and other medicines as remedies for the troubles from which she suffered, and that she had not been during this time able to do her household work, as she had before December 18, 1912, and had suffered a great deal from the effects of it, but had not been confined to her bed at any time for three months before the trial. The physician who was called to see her testified that she was in a run-down state of health, somewhat nervous, and had some symptoms of la grippe. He, also, testified that la grippe and a cold were both infectious diseases, and that a person could have one without the other, but a person having the bacilli, which produces la grippe, by reason of having a cold, and the physical strength impaired would give the la grippe the opportunity to develop itself, and that exposure on a cold night possibly and probably did produce a cold, which would superinduce la grippe.

The appellee, in her petition, alleged that she was returning from the postoffice in the direction of her home, she found the street crossing blockaded by the freight train, which remained there for about thirty minutes without moving, and that she was compelled to await its removal, and that she became chilled, and contracted a cold from so doing, which resulted in the suffering and impairment of health above mentioned. All of this was alleged to have resulted from the negligence of the employes operating the railroad train, in permitting the same to remain across the street for the time mentioned, and that they by the exercise of ordinary care could have known that she was so detained in the street, and that she did not know and could not have known by the exercise of ordinary care and prudence, that she was exposing herself to the peril of a cold, and asked to recover a judgment in damages of $5,000.00 against the appellant.

The appellant, by its answer, traversed all of the affirmative allegations of her petition, and in addition thereto, alleged that if she did become cold from waiting in the street, as she alleged, that that resulted from her own negligence in not seeking a shelter from the cold in one of the nearby houses, which were then and there open and comfortably warm. The affirmative allegations were, by agreement of parties, considered as controverted of record.

Upon these issues the case went to trial before the court and a jury, and at the conclusion of the evidence for the appellee, the appellant moved the court to instruct the jury to return a direct verdict for it, which motion was overruled.

The evidence, also, showed that the appellee saw no employe of the railroad company about the crossing while she was standing there. Evidence was introduced by the appellant of a young man and a young lady, who came to the crossing while appellee was there, but on account of the weather immediately went into the restaurant, which was about ten steps away, and remained ten or fifteen minutes, when they came out, and the train had moved. The appellant, also, proved by three near neighbor women of the appellee, that they had known nothing of her sickness, nor had observed any impairment of her health, or her failure to perform her work, as she had done, before the occurrence complained of as her ground for damages. The appellant at the close of all of the evidence again moved the court to direct the jury to return a direct verdict for it, which motion was overruled, and it took exceptions thereto. The jury returned a verdict for the appellee in the sum of $2,000.00. The appellant filed grounds and moved the court to set aside the verdict, and to grant it a new trial on account of alleged errors of the court in overruling its motions for a peremptory verdict in its favor, and, also, on account of the admission of incompetent evidence against it, and the rejection of competent evidence offered by it; and because the court had misinstructed the jury over the objection of the appellant, and had refused to instruct the jury as requested by the appellant in writing. The court overruled the motion for a new trial and the appellant now appeals to this court.

It is insisted for the appellee, that inasmuch as the train was permitted to remain across the crossing of the

street for more than five minutes, that was negligence in itself on the part of appellant, and rendered it liable for any damages which appellee sustained thereby.

The appellant contends that inasmuch as there is no penalty prescribed for a violation of the statute, which makes it unlawful for the railroad company to obstruct a crossing with a train for a longer time than five minutes, and that it can only be punished for such conduct under an indictment charging it with guilt of a public nuisance by obstructing a street by permitting a train to remain across the street for an unreasonable length of time, that no action for damages can arise to an individual from such obstruction.

It is true, there is no penalty prescribed for a violation by a railroad company of the statute making it unlawful to obstruct a street for more than five minutes, which is provided for by Section 768, Subsection 5, of Ky. Statutes, and for such reason no prosecution for a violation of this statute can be maintained. This court in discussing said statute in the case of Harvey v. I. C. R. R. Co., 159 Ky., 492, said:

"It is provided in Section 768 of the Kentucky Statutes, that a railroad company shall not obstruct any public highway or street, by cars or trains, for more than five minutes at any one time. This statute, which is merely supplementary of the common law forbidding the unreasonable obstruction of highways, is, we think, sufficient to impose upon a railroad company the duty of leaving unobstructed highway crossings for a longer time than five minutes by any one train. In other words, a train may block a crossing for a period of not longer than five minutes at any one time, but when the five minutes have expired, if the train is not ready to move, the crossing must be cleared by cutting the train in two or by some other method."

Section 466, Ky. Statutes, provides: "A person injured by the violation of any statute may recover from the offender such damage as he may sustain by reason of the violation, although a penalty or forfeiture for such violation be thereby imposed."

If a person injured by a violation of a statute, where a penalty for its violation is imposed, can recover damages from the offender, there is no sound reason why one suffering injuries from the violation of a statute, where no penalty is imposed for its violation, cannot,

also, recover damages from the offender. In the case of Shields v. L. & N. R. R. Co., 97 Ky., 103, relied upon by appellant, this question did not arise. In that case the court held, as has always been the law in this State, that an individual cannot maintain an action against one, who has created or maintained a public nuisance, on account of an injury or inconvenience, which is common to all the people of the community alike. An individual may maintain an action for an injury suffered from the creation or maintenance of a public nuisance, where he has suffered some special injury thereby, but he cannot recover for an injury, which was common to all the people of the community. Barr & Yeiser v. Stevens, 1 Bibb, 293; Seifred v. Hays, 81 Ky., 380.

While one injured by the violation of a statute may recover from the offender such damages as he has sustained by reason of the violation, the violation of the statute must be the direct and proximate cause of the injury complained of. One cannot recover damages of another merely because such other has violated a statute.

Another principle, which underlies a right of recovery of damages, either for an injury sustained by reason of the violation of a statute, or for an injury sustained in any other way, is that the one seeking the recovery must have exercised such care as an ordinarily prudent person would have exercised under like or similar circumstances to have avoided receiving the injury. If, by his failure to exercise such ordinary care, he incurs the injury, and but for his failure to exercise such care, he would not have received the injury, he has no right of recovery. If his own negligence is the cause of his injury, he has no right to attribute it to another, or if his own negligence so contributes to his injury, that although the other is guilty of negligence, also, but for his own negligence the negligence of the other would have been harmless, he is barred from recovery. Another duty that is imposed upon everyone is, that when he has suffered an infraction of his rights, is to act in such a way as to minimize his loss and make his damages as light as possible. These principles are elementary. P. M. R. R. Co. v. Hochl, 12 Bush, 43; Sullivan v. Lou. Bridge Co., 9 Bush, 90; I. C. R. R. Co. v. Dick, 91 Ky., 434; L. & N. R. R. Co. v. Cox, 8 R., 961; C., N. O. & T. P. Ry. Co. v. Palmer, 13 R., 783, 81 Ky, 403; Johnson

v. Henderson & Burke, 19 R., 1781, 44 S. W., 422; L. & N. R. R. Co. v. Sights, 89 S. W., 132; Sinclair's Admr. v. I. C. R. R. Co., 30 R., 1040, 100 S. W., 236.

Applying them to the uncontradicted evidence in the case at bar, it is evident that the appellant failed to perform its duty to appellee, by clearing the crossing at the expiration of five minutes, from the time the train was placed across the crossing, or else to have cut the train in two, and thereby cleared the crossing. It was not her duty to have hunted up the ones operating the train, as urged by appellant, and requested them to move it from the crossing, because it must be assumed that they knew that it was their duty to do so, and besides, in all probability, she could not have found them in the night without difficulty. Passing over the fact of the great difficulty of proving satisfactorily, that the cold of which appellee complains as the basis of her damages, was caused by the appellant obstructing the street crossing with its train, or that she incurred it by standing for ten or fifteen minutes in the street, we will assume that her standing in the street was the cause of the cold, as the evidence tends to uphold that contention. The uncontradicted evidence further shows, that the appellant owed appellee no contractual obligation of any kind; that she was not in a hurry, nor was any duty upon her to pass over the crossing, at once, or that she suffered any damages, either general or special, by the loss of the twenty-five or thirty minutes of time, during which the train obstructed the crossing, as she went from there, when the crossing was cleared, to her husband's store, and from there, after a time, to her home. It is undisputed, that at the time she reached the crossing from the postoffice, and found the street obstructed, she was then about ten steps from Candler's restaurant, which was open and lighted and warm, and from the door of which the movements of the train could be observed. Within less than a block, and on the street along which she had come from the postoffice, was the hotel and postoffice, both of which were open, lighted, and warm. Instead of seeking the warmth of the restaurant, as Miss McKeehan and her escort did, who approached the crossing about the same time, she chose to stand in the street for ten minutes, and feeling cold, she walked back down the street, past the hotel and postoffice, and to the corner at Harris' store, and then re-

turned to the crossing, and stood from ten to fifteen minutes longer, when the train was moved. She claims to have incurred a cold from standing in the street, and when asked why she did not enter one of these buildings, which were so near at hand, the only reason she offered for not so doing, was that she had no business in either of the places. She did not exercise the care to prevent taking a cold, which a prudent person would have ordinarily exercised under similar circumstances; in fact, exercised no care at all, and made no effort to avoid any injury which she might sustain from exposure to the weather. If she had exercised the least care, by going into one of the houses mentioned, and remaining all or a part of the time until the train moved, the obstruction of the street by the train would have caused her no harm. It seems that her own want of care was the direct and proximate cause of her incurring the cold, if it was caused by her standing in the street at all.

In the case of C., N. O. & T. P. Ry. Co. v. Rose, 115 S. W., 830, the appellee, Rose, had a contract with the railroad company to provide her a berth in a sleeper on a certain train. She met the train at Danville, at the middle of the night, when she was informed that she could not be furnished with a berth in the sleeper, and instead of going to a hotel, or to the house of her relatives, from which she came to the station, she drove five miles to her home, in the night, and from the exposure incurred a severe cold, and the consequences attending it. This court held that she could not recover on account of the cold and its consequences.

In Sandifer's Admr. v. L. & N. R. R. Co., 89 S. W., 528, the decedent of plaintiff was a child seventeen months old, and was carried by its mother, grandmother, grandfather, and an uncle, at 4 o'clock A. M., to a railroad flag station, for the purpose of all of them taking passage upon the train. They found the door of the waiting room closed, and while waiting a rain fell and drenched them all. The child incurred pneumonia and died. This court held that its administrator could not recover damages for its death, because, among other reasons, there was a storehouse about ten steps away, and a mill, where there was a fire, within twenty-five or thirty steps, in which they could have sheltered. The negligence of the parents was imputed to the child.

The question of negligence is a mixed question of law and fact, but where the facts are such that no other conclusion than that of negligence can be drawn, it should be taken from the jury. Bank v. Trimble, 21 R., 1681, 56 S. W., 156. Negligence is a question for the court, where the facts are admitted or established by undisputed testimony. Henderson Trust Co. v. Stuart, 55 S. W., 1082, 48 L. R. A., 49; Bank v. Trimble, 21 R., 1681, 56 S. W., 156; Bush v. Grant, 22 R., 1766, 61 S. W., 363; City of Maysville v. Guilfoyle, 23 R., 43, 62 S. W., 493.

For the reasons given, the court below was in error when it overruled appellant's motion to direct the jury peremptorily to find a verdict for it, both at the conclusion of appellee's evidence, and at the conclusion of all the evidence.

Having arrived at the conclusion above stated, it is unnecessary to discuss the other questions raised upon the appeal.

The judgment appealed from is reversed, and the cause is remanded to the court below, with directions to proceed in conformity to this opinion.