## Phoenix Third National Bank v. Martin.

(Decided April 29, 1927.)

## Appeal from Fayette Circuit Court.

1.  Corporations.—Where notes issued by corporation were ultra vires because exceeding the prescribed limit of corporate indebtedness, the corporation only was affected, and not the bank taking the notes, so long, at least, as the bank was taking them without knowledge of the facts.

2.  Bills and Notes.—A note is not as a matter of law always paid and extinguished when it is taken up by another note given as renewal.

3.  Corporations.—Notice of charter powers and of charter limitations must be taken by persons who deal with corporation.

4.  Corporations.—Under Ky. Stats., section 550, providing that, if directors of corporation violate provisions of Ky. Stats., c. 32, art. 1, they shall be jointly and severally liable, liability of directors permitting corporation to exceed limit of indebtedness does not depend on intentional fraud; their knowledge or want of knowledge being immaterial.

5.  Corporations.—Ky. Stats., section 550, providing that, if directors of corporation violate duties, they shall be liable for damages, and liable to be punished by fine, should be strictly construed, being intrinsically penal, notwithstanding section 459.

6.  Corporations.—To impose personal liability on corporate directors under Ky. Stats., section 550, for failure to comply with loss or damage for which recovery is sought must be natural and proximate result of failure or refusal to comply, or violation of provisions of the article.

7.  Statutes.—In construing Ky. Stats., section 550, providing that, if directors of corporation violate duties, they shall be civilly and criminally liable, statute must be read in the light of cognate laws and the general law of the land.

8. Corporations.—Suit to impose personal liability on corporate directors under Ky. Stats., section 550, for violation of section 539, subpar. 8, being in equity, equitable principles may not be disregarded.

9. Damages.—Where defendant is liable for loss resulting from one cause, and is not liable for loss resulting from another cause, and the damage may be attributed equally to either of the two causes, there can be no recovery against him.

10. Corporations.—Directors of corporation, allowing president thereof to execute in corporate name and on its behalf renewal note at time when corporation had exceeded maximum limit of corporate indebtedness, held not personally liable for corporate obligation under Ky. Stats., section 550, since violation of law was not proximate cause of loss to creditor, where indebtedness to creditor was not incurred when renewal note was executed, but at some antecednt time.

11. Croporations.—Banking creditor held estopped to claim that ultra vires act of directors in permitting execution of renewal note by corporate president on behalf of corporation, when maximum limit of corporate indebtedness under Ky. Stats., section 550, had been exceeded was proximate cause of loss to bank, where it had full knowledge that corporation had exceeded its limit of indebtedness, or the slightest exercise of diligence on its part would have disclosed such fact.

J. A. EDGE for appellant.

O'REAR, FOWLER & WALLACE, WILLIAM H. TOWNSEND, MAURY KEMPER, RICHARD J. COLBERT and ALLEN PREWITT for appellees.

OPINION OF THE COURT BY TURNER, COMMISSIONER— Affirming.

Judge Samuel M. Wilson was agreed upon by the parties as special judge to try this case in the lower court.

The judgment of that court was entered in accordance with an opinion prepared by him which appears in the transcript, and its clearness, logic, and soundness are such that this court has, in agreement with it, determined to insert it as the opinion of this court.

That opinion is as follows:

"This is a suit in equity, the original petition in which was filed September 23, 1915. The plaintiff seeks to recover $9,135, with interest from March 13, 1915, and $600, with interest from March 10, 1915; both claims being evidenced by negotiable notes. The original defen-

dants were seven in number. Of these, two have died and one has been released. One of the deceased defendants had made a composition and settlement of the claim asserted against him prior to his death, and there has been no revivor as to the other decedent. This leaves four defendants still to be dealt with, to-wit, Messrs. Houlihan, Crowe, Martin, and Treacy.

"The issues in the case may be said to lie upon the surface, and, for the elucidation of those issues, the court is indebted to counsel on the respective sides for the comprehensive and helpful briefs which have been filed with the record.

"Upon the issues and the proof it is clear that the plaintiff bank extended credit to the hotel corporation, of which the defendants were directors, on the strength of the obligation of the corporation alone. The directors, if liable at all, are only secondarily liable. It is sought to hold them liable upon the ground that, as directors, they committed a wrong, and were guilty of a breach of duty at the time the note for $9,135, of December 13, 1914, maturing March 13, 1915, and the twelve notes for $50 each, of March 10, 1915, aggregating $600, were executed by the hotel corporation. The liability asserted and sought to be enforced is statutory, not contractual; it arises by operation of law, and not by mutual agreement of the parties. The claim is essentially ex delicto, and 'sounds in tort.'

"It is established by the evidence, and the fact is undisputed, that the note of December 13, 1914, was a renewal note, evidencing an indebtedness originally created in the year 1912, $3,000 of the amount having been borrowed by the hotel corporation from the bank on February 13, 1912, and $6,000 additional having been borrowed by the hotel from the bank on May 13, 1912, and the two loans having been consolidated and evidenced by a single note for $9,000, which was executed by the hotel to the bank on or about May 15, 1912. This original note, carrying interest, added in advance, for the six-month period the note was made to run, was several times renewed, until the transaction ended with the execution of the note of December 13, 1914, now in suit. This last note being for 90 days, or 3 months, only, the interest was counted as $135, just half of what it had been in each of the five previous six months' notes, where the interest appears as $270.

"The defendants now before the court were none of them directors of the hotel corporation at the time the original note of May 15, 1912, was given.

"The articles of incorporation of the hotel company contained this limitation upon its power of contracting indebtedness, viz.:

"'That the highest amount of indebtedness or liability which said corporation may at any time incur shall not exceed the sum of $10,000.'

"It is the contention of the plaintiff that this provision of the corporate charter of the hotel company was violated at the time the notes in suit were executed, and that, in consequence of such violation, and of plaintiff's inability to collect its debts from the hotel corporation, which has been adjudged bankrupt, with assets insufficient to discharge these notes, the directors are liable to it for the amount of the notes, with interest, under section 550 of the Kentucky Statutes. That section reads as follows:

"'If the directors or officers of any corporation shall fail or refuse to comply with, or shall violate any of the provisions of, this article, those so failing, refusing or violating shall be jointly and severally individually liable for any loss or damage resulting to any person from such failure, refusal or violation, and, in addition thereto, the persons so liable shall be each punished by fine of not less than one hundred nor more than one thousand dollars.'

"The article here referred to is article 1 of chapter 32 of the Kentucky Statutes, relating to 'Private Corporations,' and the specific provision of that article involved in the alleged breach is subparagraph 8 of section 539, which requires those forming a corporation to specify in the articles of incorporation 'the highest amount of indebtedness or liability which the corporation may at any time incur.'

"There has been much discussion as to which set of directors, if either became liable in this case, should now be held liable, viz., those who were in office in May, 1912, or those who were in office in December, 1914? The plaintiff's contention is that the hotel corporation, at the time it gave the original note of May 15, 1912, was then indebted to an amount in excess of its charter limit, and, if this were so, the directors then in office became liable for the debt evidenced by the note of that date. The defendants, on the other hand, contend that the debt limit had not been exceeded, and that this initial obligation

was within the charter powers of the corporation. The proof seems to show that the total outstanding indebtedness, including all ascertainable items, of the hotel on May 14, 1912, amounted to at least $10,944.55 (or $10,-944.64), and the report of the expert accountant, Mr. Weaver, indicates that this total may have reached the sum of $17,496.28. If the actual excess was only $944.55 (a comparatively small amount), it would be difficult, if not impracticable, now to say that it was the execution of the $9,000 note to the bank that caused this slight excess in the authorized indebtedness of the hotel corporation.

"If the debt of $9,000, when incurred on May 15, 1912, was within the hotel's charter limit of indebtedness, the note given in evidence of that debt was a valid obligation, on both sides, and, I am inclined to think, each subsequent renewal was likewise valid, and, if so, neither the original note nor any renewal thereof has given rise to any cause of action under the statute against the directors of the hotel corporation. On the other hand, if the indebtedness of the hotel, on May 15, 1912, exceeded the corporation's charter limit, the directors in office, when the note of that date was given, became liable under the statute.

"For the purposes of this case it may be taken as granted that the weight of the evidence shows that the note of May 15, 1912, when given, was an unauthorized or illegal exercise of its debt-making power by the hotel, and, further, that, in each succeeding instance, the limit of indebtedness of the hotel corporation had been exceeded when the several renewal notes were given. If the first note of May 15, 1912, was ultra vires, in so far as the debtor, the hotel corporation, was concerned, it is difficult to see how such an ultra vires contract could be regarded as discharged or extinguished by a subsequent note or notes likewise ultra vires. The vice of illegality, which tainted the original note, must have attached to each subsequent renewal note, for, under the evidence, as we have accepted it, at no time after May 15, 1912, was the indebtedness of the hotel corporation ever less than or as small as the $10,000 limit prescribed in the hotel charter. But this vice in the successive transactions affected only the hotel, and not the bank, so long, at least, as the bank acted without knowledge of the facts. Hence it would seem to follow that the directors of the hotel corporation in office at the time any one of the series of notes was given became and remained liable under the

statute (Ky. Stats., section 550). If this were so, then the bank would seem to have had the power to elect which note it would sue on, and, having so elected, to proceed against the directors in office at the time such note was given. If it was not restricted to the original note, i. e. the note given May, 1912, when for the first time the hotel debt limit was exceeded, nevertheless I cannot think that it had the right to sue on any one note (much less on the entire series of notes), and, in such suit, to seek to hold liable each and all of the directors of the hotel corporation who may have been in office from May, 1912, to December, 1914, both inclusive. As a matter of fact, the plaintiff bank has elected to sue on the note of December 13, 1914, the last of the series, and is seeking a judgment against the directors of the hotel corporation who were in office at the time that note was given, and no others.

"The proof leaves no room for doubt that, when this note of December 13, 1914, was given, the limit of indebtedness of the hotel corporation had been largely exceeded. This note was unquestionably what is commonly called a renewal note. On behalf of the defendants it is contended that such a renewal did not constitute a payment or extinguishment of the antecedent note, of which it was a renewal; but that, inasmuch as the vice of illegality with which it is tainted can be traced back to the note of May 15, 1912, the plaintiff's right of action, if any there be, must be asserted against the directors in office in May, 1912, and not against the directors in office in December, 1914. But in order to reach a decision in this case, I do not feel called upon to commit myself on the question whether the note of December 13, 1914, here sued on, operated to extinguish the pre-existing note, of which it was a renewal. My inclination is to hold that it was not a payment of the past-due note, but simply a new or additional evidence of an indebtedness created in the month of May, 1912. I am satisfied that it does not, in every case, follow as a matter of law that a renewal note pays and extinguishes the note taken up by the renewal. Certainly there is no pretense here that there was an express agreement between the parties that it should be treated as payment, or as tantamount to payment. For that matter, both notes might be treated as separate and successive evidences of the same debt. But my mind is not free from doubt, and deeming it unnecessary, I refrain from ruling on this precise point.

"Granting the plaintiff, acting in ignorance of any violation of its charter by the then directors of the hotel corporation, was within its rights in taking the note of May 15, 1912, it can hardly be maintained that it was equally blameless in accepting the ultra vires renewal note of December 13, 1914, for at that time, under the allegations of the defendants' answer and the preponderance of the proof of record, it was in possession of all the essential facts, and in a position to demand and obtain a full disclosure of all the facts relative to the hotel company's business and financial condition.

"Persons dealing with a corporation are bound to take notice of its charter powers and charter limitations. Citizens' Bank v. Bank of Waddy, 126 Ky. 169, 103 S. W. 249, 11 L. R. A. (N. S.) 598, 128 Am. St. Rep. 282; Bell & Coggeshall Co. v. Ky. Glass-Works, 106 Ky. 7, 50 S. W. 2, 1092, and 51 S. W. 180; American Southern National Bank v. Smith, 170 Ky. 512, 186 S. W. 482, Ann. Cas. 1918B, 959.

"Intentional fraud on the part of the directors of the hotel corporation was not essential to make them liable under section 550, Ky. Stats. Their knowledge, or want of knowledge, is not material. But knowledge on the part of the plaintiff bank is an entirely different matter. I consider it of the utmost materiality on the question of the bank's right to recover against the directors of the hotel corporation. Nuckles v. Robinson-Pettett Co., 159 Ky. 214, 166 S. W. 972.

"Section 550, Ky. Stats., imposing a burdensome liability on delinquent directors, is a drastic law, and, on its face, it is absolute. It is doubtless true, as argued by counsel for the plaintiff, that it is not wholly penal, but is partly remedial and partly penal. Nevertheless, it is intrinsically a penal statute, for the same state of facts that would make corporate officers or directors civilly liable would make them criminally liable also. It is true that section 459, Ky. Stats., provides that 'there shall be no distinction, in the construction of statutes, between criminal or civil and penal enactments.' But, without stopping to discuss the sense or significance of this provision, I am satisfied that the statute in question, both in its civil and in its penal aspect, should be construed strictly —strictly, at least, in the sense that it ought not to be extended beyond its fair scope and reasonable intendment. It puts the directors of a corporation in a position analogous to that of sureties or indemnitors, and the

covenants and liabilities of such obligors are always construed strictissimi juris. Frost, Guarantee Insurance (2nd Ed.) p. 14. Such a construction will, in my opinion, most nearly effectuate 'the intention of the Legislature, for, as aptly stated by counsel for the defendants during the oral argument, 'a case must be within the mischief intended to be remedied.'

"Concerning the statute (Ky. Stats., section 550), two things are to be observed: (1) That the 'loss or damage,' for which recovery is sought, must be the result—i. e., the natural and proximate result—of the failure or refusal to comply with or the violation of the provisions of the article, of which this section constitutes a part, by the directors of the insolvent corporation; and (2) that this statute, of necessity, cannot be construed or enforced as if standing by itself alone, but must be read and interpreted in the light of cognate laws and the general law of the land. This is a suit in equity, and, in disposing of it, equitable principles may not be disregarded.

"The Court of Appeals of Kentucky, in the case of L. & N. R. R. Co. v. Cooper, 164 Ky. 489, 175 S. W. 1034, L. R. A. 1915E, 336, has well said:

" 'While one injured by the violation of a statute may recover from the offender such damages as he has sustained by reason of the violation, the violation of the statute must be the direct and proximate cause of the injury complained of. One cannot recover damages of another merely because such other has violated a statute '

"And in the same case the appellate court further said:

" 'Another principle, which underlies a right of recovery of damages, either for an injury sustained by reason of the violation of a statute or for an injury sustained in another way, is that the one seeking the recovery must have exercised such care as an ordinarily prudent person would have exercised under like or similar circumstances to have avoided receiving the injury. If, by his failure to exercise such ordinary care, he incurs the injury, and but for his failure to exercise such care he would not have received the injury, he has no right of recovery. If his own negligence is the cause of his injury, he has no right to attribute it to another; or if his own negligence so contributes to his injury, that although the other is guilty of negligence also, but for his

own negligence the negligence of the other would have been harmless, he is barred from recovery.'

"This, of course was an action for personal injury. Nevertheless, the general principles announced are applicable to the case at bar. Another well-settled principle, illustrated by an opinion recently written by Commissioner Turner for the Court of Appeals in a case which, at the moment, I am unable to cite, is that, where loss or damage may be attributed equally to one or the other of two causes, for one of which a defendant is liable, and for the other of which he is not liable, there can be no recovery. The doctrine of equitable estoppel, which has been invoked by the defendants in this case, in their several answers, proceeds much upon the same principles. So the maxim, In pari delicto, potior est conditio defendentis, admirably illustrated by the opinion of Chief Justice Lindsey, Ratcliffe v. Smith, 13 Bush, 172, a suit in equity, would seem to operate in favor of the defendants here. 'Acquiescence imports active consent,' and the rule invoked by the defendants had been applied to cases of acquiescense of creditors in corporate acts. 21 C. J. 1220, note 2.

"We come, then, to the immediate question: Were the directors of the hotel corporation, who were in office in December, 1914, by allowing the president of that corporation to execute in its name and on its behalf the renewal note of December 13, 1914 (the hotel at the time being indebted to an amount considerably in excess of $10,000, the maximum limit under the corporate charter), guilty of such an infraction of the law as subjected them to liability for the corporate obligation under the statute Ky. Stats., section 550)?  To this question I find myself able to make but one answer, and that is that these directors are not liable. Their disregard or violation of the law, even granting that they were guilty equally with the directors in office when the charter limit of indebtedness was first exceeded, was not, in my opinion, the proximate cause of the loss complained of; most certainly it was not the proximate cause if the renewal note of December, 13, 1914, is not to be treated as a payment and extinguishment of the pre-existing note or of the debt which such pre-existing note represented, for, according to that view (in favor of which much might be said), the indebtedness to the bank was not 'incurred' on December 13, 1914, but at some antecedent time.  See Rutland National Bank v. Paige, 53 Vt. 452; Parsons v. Rinard Grain Co. 186 Iowa,

1017, 173 N. W. 276; and Lewis v. Montgomery, 145 Ill. 30, 33 N. E. 880. But, over and above all this, the plaintiff bank is estopped now to claim or insist that the ultra vires act of the directors, in authorizing or permitting the execution of the note of December 13, 1914, was the proximate cause of the loss of which the bank complains.

"The proof shows that full knowledge of the embarrassed condition of the hotel corporation was brought home to the bank through its then president, and, if such knowledge did not in terms advise him that the hotel corporation had exceeded its charter limit of indebtedness, common prudence would seem to have required that he investigate and satisfy himself on that point, and the exercise of the slightest diligence on his part would have disclosed the true state of affairs; for he was informed as to the hotel's accumulated burden of indebtedness. The specific debt evidenced by the note of which the note of December 13, 1914, was a renewal, had been on the books of the bank for some two years and a half; and, as nearly as I can make out, the note which next preceded the renewal note of December 13, 1914, was then about 30 days overdue. All of this the bank knew, and, if it did not already know the legal debt limit of the hotel, a look at its corporate charter, a matter of public record open to public inspection, would have demonstrated that the outside debt limit of the hotel corporation had then and theretofore been largely exceeded. And much stronger is the reason for holding the bank bound by its knowledge of and acquiescence in the wrong of the hotel corporation, if, as some of the authorities indicate, the bank was chargeable with notice and constructive knowledge of the contents of the hotel company's charter or articles of incorporation, which were at all times readily accessible and subject to examination. The law does not reward carelessness, negligence, indifference, or sloth, and I cannot believe that it was ever the legislative intention, in enacting section 550, Ky. Stats., to put it in the power of any creditor, least of all a banking institution, to shut its eyes and ears and drift serenely with the tide, and rely on this enactment to save it from loss and damage in its dealing with a corporate customer.

"The question as to the liability of these defendants for the amount of the series of twelve notes, aggregating $600, which were executed by the hotel corporation to J. C. Rogers, and by him discounted before maturity to the

bank, presents a problem standing upon somewhat narrow ground and of less difficulty than that calling for solution with respect to the one larger note of December 13, 1914. As to these smaller notes, my mind is clear that there is no right of recovery on the part of the bank as against these defendants. At the time these notes were given, on March 10, 1915, the payee, Rogers, took them with knowledge of the precarious condition of the maker, the hotel corporation, and when, six days later, he discounted them at the plaintiff bank, he frankly informed that institution that the hotel was on the verge of collapse. The note for $9,135, of December 13, 1914, due 90 days after date, and maturing on March 13, 1915, was 3 days past due, and unpaid at the time Rogers discounted the smaller notes on March 16, 1915, and there was then nothing in sight to indicate that the larger post-due note would be paid; $600 added to this unsatisfied debt of $9,135, in the then known insecure condition of the hotel, must, to the certain knowledge of the bank, take the hotel well across the 'deadline' fixed by the latter's charter. From the time Mr. Treacy, one of the defendant directors, had apprised Mr. Alexander, the bank's president, of the embarrassed condition of the hotel corporation, just prior to the making of the renewal note of December 13, 1914, to the time of the purchase of the notes from Rogers by the bank, the latter had most assuredly had ample time and opportunity to look into the affairs and financial standing of the hotel; and when such knowledge, obtainable within this period, as the bank must be charged with, was reinforced by the unfavorable information furnished by Rogers himself, it seems to me the bank, on every principle of fair dealing, is estopped now to claim that these directors are liable to it for having done that of which the bank was fully cognizant at the time. It was wrong for the bank knowingly to accept illegal obligations, and it cannot take advantage of its own wrong. The harm resulting to the bank resulted, not from any violation of the statute on the part of these defendants, but from the bank's deliberate and voluntary acceptance of commercial paper, which it knew was tainted with illegality. I cannot believe that it was the purpose of this law to throw such a shield around the improvident creditor, or that the transaction, as this record reveals it, was within either the letter or the spirit of the act in question. Ky. Stats., section 550.

"The inevitable conclusion to which these views lead me is that the plaintiff's petition, as amended, must be dismissed, and the defendants awarded their costs; and a judgment to this effect will be prepared by counsel for the parties, and submitted to me for my approval."

Judgment affirmed.