## Pirtle's Administratrix v. Hargis Bank & Trust Company et al.

(Decided November 10, 1931.)

JESSE MORGAN and C. S. LANDRUM for appellant.

J. W. CRAFT, W. A. STANFILL, SOUTH STRONG, A. F. BYRD, and TURNER & BREAL for appellees.

OPINION OF THE COURT BY JUDGE RICHARDSON— Reversing for new trial.

This appeal requires a construction and application of section 466 and 2059a-10, Ky. Statutes, as to the appellee Hargis Bank & Trust Company, on the facts alleged in appellant's petition and amended petition, and as to the appellee A. H. Hargis on the alleged and proven facts. The action was instituted against them by the administratrix of J. E. Pirtle to recover damages for his death, alleged to have resulted directly and proximately from their operation, without its being equipped as required by sections 2059a-5 2059a-6, and 2059a-7, Ky. Statutes, of the Combs Hotel, situated at Hazard, Perry county, Ky., at the time it was destroyed by fire on the evening of December 15, 1928, and in which the deceased, J. E. Pirtle, was a guest when he lost his life during its burning.

The appellees Hargis Bank & Trust Company and A. H. Hargis entered their respective motions to quash the summons served on them, and each filed a special demurrer to the jurisdiction of the court. The court overruled both the motion to quash, and the special demurrer of the appellee A. H. Hargis, but sustained the special demurrer as to the appellee Hargis Bank & Trust Company, and overruled its motion to quash the summons. The effect of the ruling was for the court to take jurisdiction of the case against A. H. Hargis and to decline jurisdiction of it as to the Hargis Bank & Trust Company.

Under the authority of Ocean Accident & Guarantee Corporation v. Milford Bank et al., 236 Ky. 457, 33 S. W. (2d) 312, the court erred in sustaining the special demurrer of the Hargis Bank & Trust Company. Combs v. Hargis Bank & Trust Co., 234 Ky. 202, 27 S. W. (2d) 955.

An intelligent consideration of the right of the appellant to a recovery, and of the right of the appellee A. H. Hargis to the peremptory instruction, requires a review of the pleadings and the evidence.

The appellant filed an original and amended petition. In the first she substantially alleged that the appellees operated in the city of Hazard, Perry county, Ky., a hotel, known as the Combs Hotel, a building more than two stories high and containing more than ten sleeping rooms; that the hotel building was five stories high and contained 121 bedrooms. The bedrooms were located on the second, third, fourth, and fifth floors, and on each floor there were thirty or more bedrooms; that on the 15th day of December, 1928, and prior thereto, the appellees had possession of the building, the fixtures and furniture therein, and appurtenances; that they received guests and boarders at the hotel, charged and received compensation therefor; that J. E. Pirtle was such a guest at the hotel; that by and through agents, servants, and employees, the appellees were at the time of his death operating the hotel.

It is charged that the appellees negligently failed to equip or provide the hotel, and that it was not equipped or furnished, at the time of the fire on the evening of December 15, 1928, when deceased lost his life by reason of the burning of the hotel, with an iron stairway on the outside of the building not less than two feet wide, with steps with not less than a six-inch tread and inclined to not more than forty-five degrees from its cornice to within twelve feet of the ground, connecting each other above the ground with an opening therefrom with a platform landing at each floor, not less than six feet in length.

It is alleged that no equipment was provided in the hotel for the purpose of fighting or extinguishing fire therein. In short, it is averred that the requirements of sections 2059a-5, 2059a-6, and 2059a-7, Ky. Statutes, were absolutely disregarded by the appellees, and that by reason thereof deceased came to his death by the destruction of the building by fire on the 15th day of December, 1928. The incorporation and powers of the Hargis Bank & Trust Company are properly alleged. Allegations are made that appellee A. H. Hargis was its authorized and acting president at that time, and as such he had dominion over and the present right and power to control, and was in fact operating the hotel for the bank and trust company.

In his answer to the original petition he denied the allegations therein, except as to the incorporation of the

bank and his acting as its president. By the second paragraph of his amended answer he pleaded contributory negligence of J. E. Pirtle. By the third paragraph thereof he pleaded special facts constituting contributory negligence. Certain allegations of the appellant's amended petition on motion of the appeal were stricken. It is not necessary to a proper determination of this case to review this action of the trial court.

Certain mortgages, containing a description of the property, executed and delivered by D. Y. Combs and his wife, Mary Combs, to A. H. Hargis, and a deed of trust to the Hargis Bank & Trust Company, are set out in the petition as the source of authority of the Hargis Bank & Trust Company, as trustee of the Combs Hotel, and of Hargis to operate it. The deed of trust vested in L. F. Brashear of Hazard, Ky., the authority and duties of manager of the hotel, and exclusive supervision, direction, and control of it, with power to employ and discharge all assistants and labor, subject to the approval of the trustee, and to make report to the trustee or holders of the bonds on or before the 10th day of each month. The deed of trust was executed January 16, 1928, by Mary Combs, Della Fuller, Estelle Combs, Abbie Combs, J. Richmond Combs, Sophie Combs, and was accepted by the Hargis Bank & Trust Company, by A. H. Hargis, president, trustee, and by L. F. Brashear, general manager. Subsequent to the execution and delivery of it, an action was filed in the Perry circuit court by the Hargis Bank & Trust Company, trustee, and L. F. Brashear, general manager, against the Combses, in which on the 19th day of October, 1928, an order was entered requiring the Combses "immediately" to give to the Hargis Bank & Trust Company, as trustee, the management and operation of the hotel business, and to give to it absolute and complete possession and control of the hotel building, and "all the furniture, fixtures, paraphernalia, equipment and personal property and stores used in connection with or about the Combs property or adjunct thereto." The real estate and personal property are particularly described in the order. D. Y. Combs died on April 25, 1927, owning the Combs hotel, its furniture, fixtures, and supplies. About ten days after his death, A. H. Hargis voluntarily assumed the management and control of the affairs and business of the hotel. After he did so, he authorized and directed the tearing down and the removal of certain buildings in

460

the rear of the hotel building. On the 22d day of June, 1927, Charley Mealey took charge of the business of the hotel and continued in charge of it for nearly one year, when he ceased about May 1, 1928, to have any connection with it. A. H. Hargis stated to witnesses that he had employed Mr. Mealey to work at the hotel. After Mealey severed his connection, the Combs family operated it for about four months. During the time they operated it the income from its operation was turned over to A. H. Hargis. When the Combses ceased to operate it, Tom Hargis a son of A. H. Hargis, assumed the clerical management of the business. A. H. Hargis employed Tom Hargis to work in the hotel. He did so for about three months, and was so engaged at the time of the destruction of the building by fire. A. H. Hargis increased the wages of one employee from $60 to $100 per month. This employee continued to work at the hotel under his employment by A. H. Hargis until and including the night of the fire. He employed this man to run the furnace and to work as night clerk, and fixed his salary. He employed a housekeeper and fixed her salary. Daily reports of the receipts of the hotel were made by the day clerk and mailed to A. H. Hargis, at Jackson, Ky. A barber engaged in barbering at the hotel, for awhile paid his rent to L. F. Brashear until A. H. Hargis notified him "that he had not paid the right man, and that Brashear has nothing to do with it," and demanded that he pay it again and to "pay it right today." The checks which were delivered by this witness to Brashear were taken possession of by A. H. Hargis. A. H. Hargis directed that in the future he should pay his rent to Tom Hargis, and informed the witness that he (A. H. Hargis) had control of the Combs Hotel.

There were presented by both pleadings and the evidence the two mortgages from A. B. Combs and wife to A. H. Hargis; the deed of trust from A. B. Combs' wife and sons and daughters to the Hargis Bank & Trust Company. Also an order of court in an action wherein the Hargis Bank & Trust Company and L. F. Brashear were plaintiffs and the widow and sons and daughters of D. Y. Combs were defendants and wherein it is recited that Mary Combs, J. Richmond Combs, Sophie Combs, Abbie Combs, and Della Fuller, were required immediately to vacate the hotel, property, and to surrender to the Hargis Bank & Trust Company, the trustee under the deed of trust hereinbefore alluded to,

the "immediate, absolute and complete possession and control of the hotel building, and all of the furniture, fixtures, paraphernalia and equipment and personal property and stores used in connection in or about said hotel property or as an adjunct thereto . . . and the management and operation of said hotel business and the accounts receivable by said hotel." They were thereby enjoined "from in any wise molesting . . . trespassing on or about said property, as against the Hargis Bank & Trust Company as trustee."

These instruments show the authority of L. F. Brashear, A. H. Hargis, and the Hargis Bank & Trust Company as trustee over, and connection with, the Combs Hotel building, its property, and its business. The deed of trust conferred upon Brashear the authority of manager. While he was joined in the action as plaintiff with the Hargis Bank & Trust Company as trustee, the judgment entered appears to have terminated his authority and duties as manager, and by ample and sufficient language vested exclusively in the Hargis Bank & Trust Company all authority and power to possess, control, and manage the hotel property, its equipment, and its business. The order of court was dated October 19, 1928. The fire in which deceased lost his life occurred December 15, 1928. In his answer A. H. Hargis admitted that he was the active president of the Hargis Bank & Trust Company, prior to and on the 18th day of October, 1928, continuously until and including December 15, 1928.

The questions here presented for consideration and determination are mixed ones of law and fact. As they are presented and argued in briefs of counsel, the paramount question is one of law.

The exerpt above from the judgment of the court conclusively establishes that from the 19th day of October, 1928, up to and including the day in which deceased lost his life as a result of the fire which destroyed the Combs Hotel, the Hargis Bank & Trust Company, as trustee, "had the absolute, complete possession and control of said hotel building, and all of the furniture, fixtures, paraphernalia, equipment and personal property and stores used in connection with, on or about said hotel Combs property or as an adjunct thereto, . . . and the management and operation of said hotel business, and the accounts receivable by said Hotel Combs," and that A. H. Hargis as its president was in immediate

462

charge and control thereof, for and in behalf of the Hargis Bank & Trust Company as trutee.

Section 2059a-10, Ky. Statutes, prescribes and fixes a penalty against "any person, firm or corporation who shall operate a hotel . . ." without first complying with section 2059a-5, 2059a-6, and 2059a-7, Ky. Statutes. The word "operate," as used in this statute, embraces that character of operation of a hotel authorized by the order of court, supra. It should be construed and understood according to its common and approved usage. Section 460, Ky. Statutes.

Webster's New International Dictionary defines the word "operate" to mean "to perform work or labor; to exert power or influence; to act; to work; to produce the effect; to put into or continue operation or activity; to manage; to conduct; to carry out or through."

In State v. Woolley, 88 Conn. 715, 92 A. 662, 663, one was charged with operating a rendering plant so as to injure the health and comfort of others. Therein the word "operate" was defined to mean, "to put into or continue in operation or activity . . . to conduct or carry on the work. An it was there held that one connected with the manner in which the rendering plant was managed, conducted, or carried on, was within the purview of the statute imposing a penalty for operating such rendering plant.

In Union Tank Line Co. v. Richardson, 183 Cal. 409, 191 P. 697, it was held that the word "operate" means to convey or produce the desired result or effect; to effect any result: act.

In Toothaker v. Pleasant, 315 Mo. 1239, 288 S. W. 38, it was said "operate" means "to exert power or influence, produce an effect."

In State v. Canadian Pac. Ry. Co., 125 Me. 350, 134 A. 59, 61, the court defined it thus "Operate" means "to put into or continue in operation or activity."

Accepting this definition of the word "operate" and the proven facts which must be done on motion for a peremptory instruction, it cannot be doubted that the Hargis Bank & Trust Company as principal, and A. H. Hargis as its president, acting for and in behalf of it as trustee under the deed of trust and the order of court, were operating the hotel within the meaning of the statute, supra. If neither of them was operating the hotel within the meaning of section 2059a-10, supra, then an

anomaly in fact is here presented, in that a hotel was operated with no equipment as required by sections 2059a-5, 2059a-6, and 2059a-7, supra, without any one being subject to the penalty provided against so doing. It is admitted that the hotel was being operated without compliance with sections 2059a-6, 2059a-5, and 2059a-7. It should be conceded that if A. H. Hargis was charged by an indictment with violation of the section of the statute, supra, alleged to have been violated by him by so operating the hotel as shown by the facts herein, the giving of a peremptory instruction to find him not guilty would not be authorized by the evidence. It should also be conceded that it would be no defense to an indictment under the statute for him to prove that he was president of the Hargis Bank & Trust Company, and as such was merely acting for and in behalf of it at the time of its violation. The fact that he acted as its president in obedience to the orders of the board of directors of the bank would be no defense under such indictment against him for violating section 2059a-10. Robinson's New Criminal Law & Procedure, sec. 200, p. 290; Commonwealth v. Bottom, 140 Ky. 212, 130 S. W. 1091; Thompson v. State, 105 Tenn. 177, 58 S. W. 213, 51 L. R. A. 883, 80 Am. St. Rep. 875; Barnard v. Com., 8 Ky. Op. 760.

He could not escape the consequences of a criminal act done by him on the ground that it was an official act, and therefore the act of the corporation. Milbrath v. State, 138 Wis. 354, 120 N. W. 252, 131 Am. St. Rep. 1012.

The appellant's cause of action is not based upon a contractual relationship nor exclusively on common-law negligence. Pennyroyal Co. v. Jordan, 229 Ky. 693, 17 S. W. (2d) 720, 66 A. L. R. 1390. It is predicated on a violation of a statutory duty imposed upon the appellee for operating the hotel without complying with sections 2059a-5, 2059a-6, and 2059a-7, Ky. Statutes.

Section 466, Ky. Statutes, is in this language:

"A person injured by the violation of any statute may recover from the offender such damage he may sustain by reason of the violation, although a penalty or forfeiture for such violation be thereby imposed."

We have often held that by virtue of this section when damages or injury result from the violation of another section of the statute, the persons sustaining the

resulting injury or damage may recover same from the offender. City of Henderson v. Clayton, 57 S. W. 1, 22 Ky. Law Rep. 283, 53 L. R. A. 145; Smith's Adm'r v. National Coal & Iron Co., 135 Ky. 671, 117 S. W. 280; Lowe v. Clear Creek Coal Co., 140 Ky. 754, 131 S. W. 1007, 33 L. R. A. (N. S.) 656, Ann. Cas. 1912B, 574; Casperson v. Michaels, 142 Ky. 314, 134 S. W. 200; New Bell Jellico Coal Co. v. Sowders, 154 Ky. 101, 156 S. W. 1046; Louisville & N. R. R. Co. v. Haggard, 161 Ky. 317, 170 S. W. 956; Louisville & N. R. R. Co. v. Cooper, 164 Ky. 489, 175 S. W. 1034, 1036, L. R. A. 1915E, 336; Phoenix Third National Bank v. Martin, 219 Ky. 579, 293 S. W. 1065; Mullins v. Nordlow, 170 Ky. 169, 185 S. W. 825; Louisville Trust Co. v. Morgan, 180 Ky. 609, 203 S. W. 555, 7 A. L. R. 396; Taylor v. Davis, 110 U. S. 330, 4 S. Ct. 147, 28 L. Ed. 163.

To neglect to perform, or to violate, a duty imposed by law is one offense, and to do an unauthorized act with intent to affect another person is a distinct and separate offense. Under section 2059a-10, a neglect or refusal to perform the duty required by the previous sections is an offense under it, whether it is done with intent to affect the right of another or not. U. S. v. Baldridge (C. C.) 11 F. 552. The act of operating the hotel without the statutory equipment is itself prohibited by section 2059a-10, irrespective of the intent or motive of the person violating it.

The appellee Hargis was present at the hotel building for a sufficient length of time next prior to its burning to apprise himself of the absence of the equipment required by sections 2059a-5, 2059a-6, 2059a-7, supra. Besides this, the evidence shows that he had discussed with the witness the absence of this equipment, and had actual knowledge during a reasonable length of time before the fire to inform his principal, the Hargis Bank & Trust Company, of the fact that the statute in this respect had not been complied with. He was thus in possession of the facts and ignorance of the law excuses no one. Sevier's Ex'x v. Com., 181 Ky. 49, 203 S. W. 1070.

It should be conceded that both the Hargis Bank & Trust Company and A. H. Hargis, its president, under the proven facts, would be subject to indictment for violation of section 2059a-10, and that the fact that one was principal and the other its agent in the acts constituting a violation of this section, would be no defense to either.

Each would be liable individually to the punishment prescribed by the statute. Miller v. Com., 240 Ky. —, 42 S. W. (2d) 518; Commonwealth v. Bottom, supra. By a parity of reasoning, each is likewise liable in damages sustained by a third person as the direct and proximate result of such violation.

The general rule is that a trustee is liable as an individual for his tort, and not in his official capacity, and this for the sound reason that the trustee should not be allowed by his tort or negligence to impair the trust fund. City of Louisville v. O'Donaghue, 157 Ky. 243, 162 S. W. 1110. This general rule however, is subject to exceptions. It has been held that when a trustee is charged with the duty of carrying on a business, the estate may be liable for the negligent acts of other employees. 19 Ann. Cas. 388; 26 R. C. L., sec. 178, p. 1319; Parmenter v. Barstow, 22 R. I. 245, 47 A. 363, 63 L. R. A. 227; Birdsong v. Jones, 220 Mo. App. 768, 8 S. W. (2d) 98. A second anomaly in the law would be presented here to concede that under the universally applicable principles, in such cases the principal is liable to an injured third person, but his agent who actually caused the damage was not individually liable therefor. No principle of agency is violated in holding both the principal and agent for the conduct of the agent in the violation of this section, nor to the theory that the trustee is individually responsible. Commonwealth v. Sacks, 214 Mass. 72, 100 N. E. 1019, 43 L. R. A. (N. S.) 1, Ann. Cas. 1914B, 1076.

In Phoenix Third National Bank v. Martin, supra, an action was instituted against the directors of the bank for a liability asserted and sought to be enforced against them for the violation of a statutory duty or a duty arising by operation of law and not by the contractual relationship nor by acts arising out of mutual agreement of the parties. It was held that the action essentially was one ex delicto and sounded in tort. The basis of action there was identical in respect to the action in the present case. The rule announced by the court in Louisville & N. R. R. Co. v. Cooper, supra, and approved in Phoenix Third National Bank v. Martin, supra, is applicable and controlling in the present case, and it may now be regarded as the law of this state controlling an action for damages arising out of, or from, a violation of a statute.

It is a generally recognized rule that a recovery of damages against the principal may be had for a negligent disregard or violation of a statutory duty arising by or from the act of an agent who undertakes to discharge it for his principal. Also such disregard or violation of his duty by the agent renders him personally liable for injury sustained by a third person as a result of such disregard or violation of his duty. This principle was aptly and correctly stated by the court in Mayer v. Thompson-Hutchison Buildings Co., 104 Ala. 611, 16 So. 620, 623, 28 L. R. A. 433, 53 Am. St. Rep. 88, where it is said:

"The liability of the principal or master to third persons does not depend upon any privity between him and such third persons. It is the privity between the master and servant that creates the liability of the master for injuries sustained by third persons on account of misfeasance and nonfeasance of the servant or agent. It is difficult to apply the same principles which govern in matters of contract between an agent and third persons to the torts of an agent which inflict injury on third persons, whether they be of misfeasance or nonfeasance, or to give a sound reason why a person who, acting as principal, would be individually liable to third persons for an omission of duty, becomes exempt from liability for the same omission of duty because he was acting as servant or agent. The tort is none the less a tort to the third person, whether suffered from one acting as principal or agent, and his rights ought to be the same against the one whose neglect of duty has caused the injury. . . . It is not his contract that exposes him to liability to third persons, but his common-law obligation to so use that which he controls as not to injure another. . . . In Campbell v. Portland Sugar Co., 62 Me. 552, 16 Am. Rep. 503, it is said: 'It is the actual, personal negligence of the agents which constitutes the constructive negligence of the corporation. The corporation acts through and by them, and they act for the corporation; and, when their acts or neglects result in injury to third persons, they are equally responsible with their principals.' The rule is broadly stated in 14 Am. Eng. Enc. Law, 814. We might cite other decisions, if deemed necessary. We hold that the

mere relation of agency does not exempt a person from liability for any injury to third persons, resulting from his neglect of duty, for which he would otherwise be liable.''

In Nunnelly v. Southern Iron Co., 94 Tenn. 397, 29 S. W. 361, 28 L. R. A. 421, the principles applicable to the alleged and proven facts in the present case are most aptly stated.

In Carson v. Quinn, 127 Mo. App. 525, 105 S. W. 1088, it is held that an agent who has exclusive supervision and control over premises used for tenement purposes is personally liable for injuries received by a new tenant from a hole left uncovered in the passageway. The same rule was announced and followed in Bannigan v. Woodbury, 158 Mich. 206, 122 N. W. 531, 133 Am. St. Rep. 371; Atkins v. Field, 89 Me. 281, 36 A. 375, 56 Am. St. Rep. 424; Stiewel v. Borman, 63 Ark. 30, 37 S. W. 404.

In Burns v. Petheal, 75 Hun. 437, 27 N. Y. S. 499, 503, it is stated:

"If the duty omitted by the agent or servant devolved upon him purely from his agency or employment, his omission is only of a duty he owes his principal or master, and the master alone is liable; while if the duty rested upon him in his individual character, and was one that the law imposed upon him independent of his agency or employment, then he is liable."

The duty omitted or neglected by A. H. Hargis was a statutory one imposed upon him, as the persons operating the hotel, whether for himself or as president of the bank and trust company, and his liability falls clearly within the rule enunciated in Burns v. Pethcal, supra.

One of the clearest principles which this court has recognized and applied is that an agent of a corporation is liable in damages for injuries suffered by third persons because of his (the agent's) tort, regardless of whether he acted on his own account or in behalf of a corporation, and regardless of whether or not the corporation is also liable. Waller v. Martin, 17 B. Mon. 181; Thompson on Corporations, vol. 5, sec. 5457; Ward v. Pullman Car Corp., 131 Ky. 142, 114 S. W. 754, 25 L. R. A. (N. S.) 343; Chesapeake & O. R. R. Co. v. Banks' Adm'r, 144 Ky. 137, 137 S. W. 1066; Haynes' Adm'rs v. C., N. O. &

T. P. Ry. Co., 145 Ky. 209, 140 S. W. 176, Ann. Cas. 1913B, 719; Murray v. Cowherd, 148 Ky. 591, 147 S. W. 6, 40 L. R. A. (N. S.) 617; Evans Chemical Works v. Ball, 159 Ky. 399, 167 S. W. 390; Cox's Adm'r v. C., N. O. & T. P. Ry. Co., 238 Ky. 312, 37 S. W. (2d) 859.

In some jurisdictions the servant is not liable to third persons for nonfeasance, but is for misfeasance, but a contrary rule and one more in accord with the weight of authority prevails in this state. We do not recognize any distinction, so far as the accountability of the servant to third persons is concerned, between the acts of misfeasance and nonfeasance. Haynes' Adm'rs v. C., N. O. & T. P. R. Co., supra; Ward v. Pullman Car Corp., supra; and Illinois C. R. R. Co. v. Coley, 121 Ky. 385, 89 S. W. 234, 28 Ky. Law Rep. 336, 1 L. R. A. (N. S.) 370; Chesapeake & O. Ry. Co. v. Bank's Adm'r, supra; Murray v. Cowherd, supra; Evans Chemical Works v. Ball, supra.

In the note to Ward v. Pullman Car Corp., supra, the editor has collected cases from other jurisdictions supporting the view expressed in these cases.

It is a firmly fixed rule that one injured by a violation of a statute may recover from a defendent such damages as he has sustained by reason of a violation of it. It is equally as well established that such violation must be the direct and proximate cause of the injury complained of. A recovery of damages from another may not be sustained merely because such other has violated a statute.

In Louisville & N. R. R. Co. v. Cooper, supra, it is said: "Another principle, which underlies a right of recovery of damages, either for an injury sustained by reason of the violation of a statute or for an injury sustained in another way, is that the one seeking the recovery must have exercised such care as an ordinarily prudent person would have exercised under like or similar circumstances to have avoided receiving the injury. If, by his failure to exercise such ordinary care, he incurs the injury, and but for his failure to exercise such care he would not have received the injury, he has no right of recovery. If his own negligence is the cause of his injury, he has no right to attribute it to another; or if his own negligence so contributes to his injury, that although the other if guilty of negligence also, but for his own negligence the negligence of the other would have

been harmless, he is barred from recovery. Another duty that is imposed upon every one is that, when he has suffered an infraction of his rights, is to act in such a way as to minimize his loss and make his damages as light as possible. These principles are elementary. P. & M. R. R. Co. v. Hoehl, 12 Bush, 43; Sullivan v. Lou. Bridge Co., 9 Bush. 90; I. C. R. R. Co. v. Dick, 91 Ky. 434, 15 S. W. 665, 12 Ky. Law Rep. 772; L. & N. R. R. Co. v. Cox, 8 Ky. Law Rep. 961; C., N. O. & T. P. Ry. Co. v. Palmer, 13 Ky. Law Rep. 783; Louisville & N. R. Co. v. McCoy, 81 Ky. 403; City of Henderson v. Burke, 44 S. W. 422, 19 Ky. Law Rep. 1781; L. & N. R. R. Co. v. Sights, 121 Ky. 203, 89 S. W. 132, 28 Ky. Law Rep. 186; Sinclair's Adm'r v. I. C. R. R. Co., 100 S. W. 236, 30 Ky. Law Rep. 1040.''

The appellee insists that a peremptory instruction was authorized by the evidence on the ground that it sustained his plea of contributory negligence. It is shown by the evidence that the deceased, Pirtle, was occupying a room on the fifth floor in the hotel at the time of the fire which destroyed it. The door to his room opened into a larger one. The hallway from that floor was reached from his bedroom by passing through a larger room into the hallway which led into another hall, and from which, either by an elevator or an inside stairway, he was compelled to reach an exit on the ground floor. At the time he was warned of the presence of the fire in the building, he was in the bathroom opening into the room he was occupying. The presence of the fire in the building was imparted to him by a neighbor roomer who occupied a near room on that floor, while he was in the bathroom. At the time the information was imparted to him, the place of the fire and its extent do not appear to have been fully made known to him. In a few moments afterward, smoke accumulated, and more or less spread throughout the building. To escape from the fire it was necessary for him to make his way from the fifth floor to the exit on the ground floor of the building.

The burden of proving contributory negligence rested upon the appellee. Louisville & N. R. R. Co. v. Park's Adm'r, 154 Ky. 269, 157 S. W. 27; Cox's Adm'r v. C., N. O. & T. P. Ry. Co., 238 Ky. 312, 37 S. W. (2d) 859.

It should not be presumed that deceased intentionally remained in the building with knowledge of the pres-

ence, the whereabouts, and the extent of the fire, and thereby brought about his own death. We believe that we are safe in saying that the burden of establishing contributory negligence on the part of the deceased was not met by the evidence heard by the jury in behalf of appellant. It is argued that the witnesses who testified for appellant were shown to be hostile to appellee, and that but little weight should be given their testimony. Their credibility and the weight to be given their testimony were for the jury. Knoxville Tinware Mfg. Co. v. American Safety Mine Appliance Co., 231 Ky. 282, 21 S. W. (2d) 451.

The judgment is reversed for a new trial as to the appellee A. H. Hargis, and for a trial as to the appellee Hargis Bank & Trust Company, consistent herewith.

Whole court sitting.