## Winco Block Coal Co. et al. v. Stewart.

Jan. 31, 1939.

JAMES F. BAILEY, Judge

WILLIAM R. McCOY and EARL CASSADY for appellants.

JASPER H. PREECE and W. H. D. PREECE for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

This action was brought September 26, 1936, in the Martin circuit court by the appellee, Robert Stewart, as Inspector of Scales and Weights, for recovery of damages against the appellants, Winco Block Coal Company and its superintendent, Charles Lambert, allegedly sustained by him as the result of appellants' violation of the provisions of the penal statute, Section 2739-48, Kentucky Statutes (Baldwin's 1936 Revision), forbidding the company or its agents from hindering or preventing him in the proper performance of his official duties as check weighman for the coal loaders at the appellants' mine, by and for whom he was elected under and pursuant to the provision and authority of the statute, supra.

Upon submission of the cause to the jury upon the evidence and the instructions of the court, it returned a verdict awarding recovery of damages, in the sum of $800, to the plaintiff, on which judgment was entered.

Appellants appeal, seeking a reversal of this judgment on various grounds of error assigned, but principally upon the one ground that the court erred in refusing to give the peremptory instruction they moved for at the conclusion of the introduction of evidence for plaintiff and renewed at the conclusion of all the evidence.

The appellee, by his petition filed in this action, alleges that the defendant coal company, during the years 1935 and 1936, was operating a coal mine at Oppy, Martin county, Kentucky, and that Charles Lambert, named in the petition as co-defendant with the coal company, was the superintendent of said mine during said years; further, that on June 30, 1935, he was, in accordance with the provisions of Section 2739-48, Kentucky Statutes, duly elected and designated as check weighman by the miners and coal loaders employed at said mine for a period of one year and that upon his election being duly certified to the Martin county court, he was by its order, duly entered of record as required, appointed and approved by the court as said check weighman for the miners of the Union Local No. 6194, maintained at the defendant coal company's mine, for the period of one year; also, that by reason of his having been elected and appointed as check weighman at the mine in the manner provided by the statute, he was, as the coal loaders' chosen check weighman, thereby given and vested with the right of free access to the company's mine scales while same were in operation or being tested and, as was also expressly provided by the statute, that the mine operator and any of its agents were prohibited, under penalty of fine, from preventing or hindering him in the proper performance of his duties as such elected and serving official.

Further, he alleged that on October 15, 1935, following his election and appointment in June as check weighman at the defendant coal company's mine, the appellants, while he was attempting to perform the duties of check weighman, came to the place at the mine where he was working and with force and arms, and in a boisterous and threatening manner, did unlawfully molest and drive him from his work and told him not to come upon their premises again, under threat of death or great bodily harm; that he at the time protested their preventing him from working, and requested that he be permitted to perform his duties of check weighman, but was by the defendant Lambert, in violation of the statutes, refused the opportunity to do his work and that, after having been thus threatened and driven from the mine, he was afraid, lest he would be killed, to again go back to reclaim his job and perform its duties during the remainder of the year for which appointed; that at the time he was driven from his work, he was earning

from $6.50 to $7.50 a day, (computed upon the basis of a commission, paid out of the miner's wage, of 1½c per ton of coal, check weighed by him) and that by reason of the defendants' wrongful acts in refusing to permit and in hindering him from carrying out his contract of employment made with the miners, to check weigh the coal they mined, that he was deprived of the wages he would have earned, at the rate and average amount per day as stated, had he not been unlawfully prevented by appellants from serving for the remainder of his year's term of some nine months, and because of which he alleged that he had been damaged in the sum of $1.000, for the recovery of which he sued and prayed judgment against the defendants, the Winco Block Coal Company and Charles Lambert, with interest and costs.

Defendants responded with a joint and separate answer of three paragraphs, by the first of which the material allegations of the petition were denied; by the second they affirmatively pleaded that following the election and appointment of the plaintiff as check weighman in June, 1935, as alleged in the petition, he was in August next following so badly injured in a railroad accident that he was thereby prevented from performing the duties of his check weighman's position during the period of his convalescence of some two months, and that by reason of such disability, rendering him for the time unable to continue at his work, the miners had elected, as his successor to the position, Joe Johnson, also a fellow employee, who was thereupon duly approved and appointed by the county court as such for the remainder of the term of one year; that later, on October 15, 1935, when the plaintiff, Albert Stewart, having recovered from his injury, returned to the mine, where he sought to resume his duties as check weighman, he was prevented from so doing by the defendant, Lambert, the mine superintendent, for the reason, as he told him, that Joe Johnson had, during his illness, been elected by the miners to succeed him as their check weighman at the mines and was then holding such position; that thereupon confusion arose among the miners as to which of the two was then entitled to serve for the remainder of the term as check weighman at the mine, and a meeting of the miners was called for settling the controversy, at which they by their votes had designated and elected, as their check weighman, Joe Johnson to complete the year for which he had been

originally appointed to serve, upon the happening of plaintiff's accident and injury in August.

By the third paragraph, appellants stated that plaintiff had been paid for the services rendered by him following his election in June up to the time he became disqualified for the job by injury, in August, when Joe Johnson had been elected and appointed to succeed him as check weighman, and that defendants had taken no part in the election of Johnson, as the election of check weighman for the coal loaders was a matter resting entirely in the miners' hands for determination.

A reply traversed the allegations of the answer.

The defendants were then permitted to file an amended answer, whereby they alleged that the defendant company was and is a member of the operators association of Williamson Field and operating coal property within the territory embraced in District No. 17, United Mine Workers of America, and that plaintiff was a member of District No. 17, United Mine Workers; that on October 1, 1935, the operators' association, consisting of coal operators, mining coal properties within the territory embraced in District No. 17, United Mine Workers of America, entered into an agreement with the members of District No. 17, which included the employment of a check weighman, etc., and that pursuant to this agreement, the plaintiff was not an employee of appellants, nor subject to their orders or control, and that his wages were paid entirely by the members of the United Mine Workers' Local No. 6194.

A copy of the contract, marked "Exhibit A," was filed.

The proof introduced by the parties in support of the issues thus joined are of strikingly contradictory character, but substantially tended to establish the positions taken by each of the parties in this controversy.

The testimony for plaintiff, which was clearly corroborated by the records of the local union, which were introduced in evidence by their custodian, the secretary of the local union, was to the effect that the plaintiff, Stewart, was in June, 1935, elected by this local union as their check weighman for a period of one year and that, his election being certified to the county court for its approval and appointment as such, he was duly appointed check weighman by the order of the court, en-

tered upon its records to such effect. No such record proof, whether of the miners' local or of the court, established the election of the miner, Joe Johnson, as check weighman.

Further, it was shown by the minutes of the union that on October 17, 1935, following Stewart's recovery from his injury and his attempt then made to reclaim his job at the mines as check weighman, a meeting was held and the following entries made in the record book as to the action taken at that meeting:

"Motion was made and seconded that Joe Johnson be nominated for assistant check weighman. * * *

"Motion made and seconded that we elect a check weighman.

"Motion made and seconded that Joe Johnson be appointed assistant check weighman."

Further, it is shown that the mine committee of the union, being advised that the defendant Lambert refused to allow Stewart to resume the performance of his duties as check weighman, took up the matter with Lambert, insisting that he be allowed to take back his job, as the miners had instructed them, the members of the committee, to tell him that such was the wish and vote of the union and that if he, Lambert, didn't permit him to resume his work as their representative, they would quit work. It is testified that Lambert then said that they would have to do so, as he was not going to let Stewart have the place, as Joe Johnson was then the elected incumbent of it.

Plaintiff's testimony is further that when he was injured in August, 1935, shortly after his election to this position, he himself appointed Joe Johnson, his fellow miner, to act as his assistant in performing the duties of the position of check weighman during the time of his convalescence from his injury and also that Johnson was so temporarily appointed by the miners, but that, notwithstanding this, when he went back to the mine on October 15 to reclaim the place, Johnson refused to surrender it, claiming that he had been elected by the miners and appointed by the court as check weighman to succeed him.

Johnson testified for the defendants that although he had first been appointed as assistant check weighman,

he was later appointed check weighman by the miners, because such was required in order for him to be approved and appointed by the court, which was done.

However, there is no record proof supporting Johnson's contention as there is as to Stewart's.

The defendant Lambert, while admitting that he refused to allow Stewart to reclaim his job when he returned to the mine in October, states that he did so not from any personal feeling against Stewart, but only because he considered Johnson as the then elected incumbent of the job.

Upon the conclusion both of the plaintiff's evidence and of all the evidence, motion was made by defendants for a directed verdict in their favor, which was refused, when the court in substance instructed the jury by its instruction No. 1 that if they believed from the evidence that Stewart was employed as check weighman for the miners' local union and that he was wrongfully prevented from carrying out his contract, if any, they should find for the plaintiff and assess his damages at such sum as would fairly compensate him for his said loss, if any, but in an amount not to exceed the sum of $1,000, as prayed for in his petition. Further, the court, by its instruction No. 2, told the jury that if they believed the plaintiff and defendants were operating under a contract with the United Mine Workers, etc., as introduced in evidence, and that plaintiff "was superseded as check weighman by the miners of said local union and a new check weighman appointed in his stead, and he failed to prosecute an appeal as provided in said contract between the plaintiff and defendants, then and in that event, the law is for the defendants, and you will so find."

Under these instructions and evidence, the jury returned a verdict for $800, from which the defendants appeal, asking its reversal mainly upon the ground that the court erred in refusing to peremptorily instruct the jury in their favor, as moved for.

From the summary of the evidence above given, it is patent that the court committed no error in its ruling refusing to direct a verdict or in giving to the jury instruction No. 1, supra.

The appellee having been prevented and hindered in the performance of the duties of his position as check

weighman, for which elected, he filed this suit, seeking recovery of damages suffered by reason of their wrongful action and violation of the penal statute 2739-48, expressly enjoining the interference by the mine operator or his agents with the elected check weighman of the miners in the performance of his duties.

Section 466, Kentucky Statutes, provides that:

"A person injured by the violation of any statute may recover from the offender such damage as he may sustain by reason of the violation, although a penalty or forfeiture for such violation be thereby imposed."

As stated in Pirtle's Adm'x v. Hargis Bank & Trust Company, 241 Ky. 455, 44 S. W. (2d) 541, 544, "We have often held that by virtue of this section when damages or injury result from the violation of another section of the statute, the persons sustaining the resulting injury or damage may recover same from the offender."

See the Pirtle Case for the numerous cases cited therein in support of such holding.

The plaintiff below, contending that he had been injured by appellants' violation of this statute, sought recovery from the offending mine operator and its agent of such damages as he had sustained by reason of their violation and under the instructions of the court was awarded the compensatory sum of $800.

After a very careful consideration of the whole record, we conclude that no prejudicial error was committed by the lower court in conducting this trial or in the instructions given the jury or that its verdict finding for the plaintiff was unsupported by substantial evidence, or was against the weight of the evidence, and it is our conclusion that the judgment should be and it is affirmed.